

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-1995

# Petrucelli v Bohringer

Precedential or Non-Precedential:

Docket 94-1425

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"Petrucelli v Bohringer" (1995). *1995 Decisions.* Paper 31.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/31

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-1425


DAVID PETRUCELLI;
TRACY A. PETRUCELLI, Husband and Wife

v.

BOHRINGER AND RATZINGER, GMBH AUSDEREITUNGSANLAGEN;
JAKE DIEL CONSTRUCTION MACHINE, INC.;
TECO ELECTRIC AND MACHINE COMPANY, LTD.

v.

EXCEL RECYCLING & MANUFACTURING, INC.,

Third-Party Defendant

David Petrucelli and Tracy A. Petrucelli,

Appellants


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 91-cv-02098)


Argued:  September 22, 1994
BEFORE:  Becker, Cowen and Garth
Circuit Judges

(Filed  February 1, 1995 )


John R. Vivian, Jr.
Gus Milides
Michael A. Snover (Argued)
Law Offices of John R. Vivian, Jr.
654 Wolf Avenue
Easton, PA  18042

          Counsel for Appellants
          David and Tracy A. Petrucelli

Warren E. Voter
J. Michael Kunsch (Argued)
Sweeney, Sheehan & Spencer
1515 Market Street
Three Penn Center Plaza
Philadelphia, PA  19102

          Counsel for Appellee
          Bohringer and Ratzinger, GMBH
          AUSDEREITUNGSANLAGEN

Christopher C. Fallon, Jr.
Josh M. Greenbaum (Argued)
Cozen & O'Connor
The Atrium
1900 Market Street
Philadelphia, PA  19103

          Counsel for Appellee
          Jake Diel Construction Machine, Inc.

**OPINION**


COWEN, <u>Circuit</u> <u>Judge</u>.

          This appeal arises from an order dismissing a personal injury suit without prejudice after the plaintiff failed to serve a summons upon the defendant within 120 days of filing the complaint as required by Rule 4 of the Federal Rules of Civil Procedure.  The issue of whether, subsequent to a recent rule change, Rule 4(m) permits a district court to extend time for service even absent a showing of good cause is one of first impression at the federal appellate level.  We conclude that, under the former rule, the district court did not abuse its

discretion in refusing to extend time beyond the 120 days within which service was to be effected after finding no good cause present.  Nevertheless, because we conclude that the new rule affords a district judge greater discretion, we remand to the district court for reconsideration on this issue only.  Additionally, we will affirm the order of the district court granting summary judgment in favor of one of the defendants.  Finally, it was not error to deny plaintiff's motions for a default judgment and to compel discovery.

## I.

### A.  Factual Background

Plaintiff David Petrucelli ("Petrucelli")[1] was employed by American Fuel Harvester in East Bangor, Pennsylvania, where he was involved in recycling demolition materials.  The recycling process consisted of obtaining materials from demolished buildings, and dumping the material into an impact rotor crusher machine ("rotor crusher").  The rotor crusher chopped and pulverized the material into smaller pieces which were then discharged from the bottom of the rotor crusher.  The material was discharged through a transition chute to a vibrating feeder, and then to a hopper on the discharge conveyor.  All of the component parts of the recycling machine, including the rotor

---

[1].  Tracy Petrucelli was also a plaintiff in the suit, claiming loss of consortium.  For purposes of this appeal, both David and Tracy Petrucelli will be referred to collectively as "Petrucelli."

crusher, were ordered by American Fuel Harvester from defendant Jake Diel Construction Machinery, Inc. ("Jake Diel").

Jake Diel designed and manufactured the recycling machine and later assembled it on the premises of American Fuel Harvester. Many of the component parts of the recycling machine, including the transition chute, the vibrating screen, the machine chassis, the control booth, and the discharge conveyor, were made by Jake Diel. Jake Diel bought for incorporation into the recycling machine other components, such as the rotor crusher made by defendant Bohringer & Ratzinger ("Bohringer"). Although the rotor crusher and the discharge conveyor were all part of the same recycling machine, there were three independent components between the rotor crusher and the discharge conveyor. From the recycling machine's control booth, most of the various conveyor belts could be individually turned on and off, but from that vantage point, most or all of the discharge conveyor could not be seen. Bohringer did not participate in the decisions regarding the design or the location of the control booth and its operating controls.

On August 8, 1989, while working with the recycling machine, Petrucelli noticed that the conveyor was not functioning properly. One of his co-workers went to the control booth to turn off the machine. After the machine was turned off, Petrucelli attempted to dislodge some wire caught in the roller of the discharge conveyor of the recycling machine. While performing this task, one of his co-workers turned on the

recycling machine.  Petrucelli's left arm was torn off after being pulled into the conveyor mechanism.

## B. Procedural History

Petrucelli filed a complaint on April 1, 1991, and thereafter an amended complaint in the United States District Court for the Eastern District of Pennsylvania.  In the amended complaint, Petrucelli asserts claims for negligence, strict products liability, breach of warranty, misrepresentation, and punitive damages.  Petrucelli enlisted the aid of Attorney Process Service ("APS") to assist in serving process upon the defendants.  He informed APS that the nameplate on the machinery indicated that Jake Diel was located in both Texas and Oklahoma. APS advised Petrucelli that "Jake Diehl (sic) Construction" could be served through the Secretary of State of Oklahoma, but that "Jake Diehl (sic) Construction and Machinery Co." was not subject to service in Texas (March 26, 1991 letter from APS; App. at 66.) because its corporate charter was revoked by the Secretary of State of Texas on November 1, 1988.  Inexplicably, prior to sending the summons and complaint, Petrucelli never confirmed or otherwise verified with the Secretary of State of Oklahoma that Jake Diel was a corporation in good standing with the State of Oklahoma, capable of being served through the Secretary of State of that jurisdiction.

On July 25, 1991, Petrucelli sent a copy of the summons and complaint and a copy of a Notice of Acknowledgment of Receipt of Summons and Complaint to the Secretary of State of Oklahoma,

who received these documents on July 29, 1991. On March 19, 1992, the Secretary of State of Oklahoma issued a certificate of proof of service which stated that it had been served as the agent for "Jake Diehl (sic) Construction and Machinery Co." on August 5, 1991. The certificate of service also indicated that on August 7, 1991, the Secretary of State of Oklahoma sent the summons and complaint to an address in Hereford, Texas, via certified mail, return receipt requested, but that the letter had been returned undelivered on August 14, 1991. However, Petrucelli contends that in August of 1991, he communicated with the offices of the Secretary of State of Oklahoma by telephone, and was verbally assured by someone in that office that Jake Diel had been served via certified mail.

Meanwhile, Bohringer impleaded Excel Recycling & Manufacturing, Inc. ("Excel") as a third-party defendant, believing that Jake Diel had legally changed its corporate name to Excel.[2] After Jake Diel failed to respond, Petrucelli, in May of 1992, moved for a default judgment against Jake Diel or alternatively to extend time for service. Both of these motions were denied, resulting in the dismissal of Jake Diel from these proceedings as a direct defendant.[3]

---

[2]. Excel confirmed in its answer on March 6, 1992 that it was formerly known as Jake Diel Construction Machinery, Inc. prior to Jake Diel's filing of a Name Change Certificate on December 29, 1989 (and was incorrectly named in Petrucelli's amended complaint filed October 19, 1991, as Jake Diel Construction Machine, Inc.).

[3]. The district court denied entry of a default judgment for failure to properly serve the defendant Jake Diel. While the suit was dismissed without prejudice, the statute of limitations

Defendant Bohringer subsequently moved for summary judgment.[4]  Petrucelli opposed Bohringer's motion and filed a motion seeking to compel Bohringer: (1) to answer the interrogatories that Excel had served on Bohringer; and (2) to produce the documents that Excel had previously demanded of Bohringer.  The district court granted summary judgment in favor of Bohringer and denied Petrucelli's motion.

Petrucelli appeals the orders of the district court: (1) denying his motions for default judgment against Jake Diel or, alternatively, to extend the time for service on Jake Diel; (2) granting summary judgment in favor of defendant Bohringer; and (3) denying Petrucelli's motion to compel discovery from Bohringer.  We will affirm the orders of the district court.

**II.**

A.  Denial of Motion for Default Judgment

Petrucelli argues that the district court erred by not granting his motion for a default judgment against Jake Diel. Assuming that proper service of process was effected on Jake Diel, we can reverse the district court only if we find that it abused its discretion in denying the motion for a default

(..continued)
on the underlying causes of action had run at the time of dismissal of Jake Diel from these proceedings.

[4].  The amended complaint also named Teco Electric and Machine Company ("Teco") as an additional defendant.  Teco also moved for and was granted summary judgment.  Petrucelli did not oppose this motion, and thus Teco is not a party to this appeal.

judgment.  See Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 153 (3d Cir. 1986).  Insofar as this issue pertains to whether Jake Diel was properly served, our standard of review is plenary. Stranahan Gear Co. v. NL Industries, Inc., 800 F.2d 53, 56 (3d Cir. 1986).  See also Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993) ("We exercise plenary review over issues concerning the propriety of service under Federal Rule of Civil Procedure 4.").  We note that if a default judgment had been entered when there had not been proper service, the judgment is, a fortiori, void, and should be vacated.  Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985).

Petrucelli filed the complaint on April 1, 1991. Pursuant to former Rule 4(j), the predecessor to Rule 4(m), of the Federal Rules of Civil Procedure, he had 120 days (until July 30, 1991) to serve the summons and complaint upon Jake Diel.[5] The return receipt from the mailing indicates that the Secretary of State of Oklahoma received the summons and complaint on July 29, 1991, just within the 120-day limit.  Petrucelli contends that since he served Jake Diel's authorized agent, service was effective.  However, as of November 1, 1988, Jake Diel was no longer a foreign corporation authorized to conduct business in Oklahoma.  Because the Secretary of State of Oklahoma was no

_____

[5].  Although not even mentioned or pled by the attorney for Petrucelli, Rule 4(j) of the Federal Rules of Civil Procedure was amended, and the successor subdivision, Rule 4(m), went into effect on December 1, 1993.

longer the authorized agent to accept service of process on behalf of Jake Diel, we conclude that serving the Secretary of State was ineffective as service on Jake Diel. Thus, Jake Diel was not served within the 120-day period required by the rule. Indeed, it would have been error as a matter of law for the district court to enter a default judgment against Jake Diel when it was never served.

### B.  Denial of Motion to Extend Time for Service

Petrucelli next argues that the district court should have granted his alternative motion for an extension of the 120-day limit to serve Jake Diel, pursuant to Rule 4(j).  When Petrucelli argued his motion to extend time for service before the district court in May of 1992 and when the district court entered its memorandum order in August of 1992 denying Petrucelli's motion, former Rule 4(j) had not yet been amended.

In 1992, Rule 4(j) read in pertinent part:

> **Summons:  Time Limit for Service**.  If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed. R. Civ. P. 4(j) (1991) (emphasis added).  Under this rule, a district court was required to dismiss a case if service of

process was not effected within the 120 day period, unless the plaintiff showed good cause for the delinquency.[6]

As of December 1, 1993, Rule 4(j) was amended and redesignated as Rule 4(m). While the change in designation from (j) to (m) is of no import, the language in this subdivision was substantially modified. Although counsel for Petrucelli failed to bring this substantive change to our attention, our own research has revealed this critical change in the rule.

Initially, we question whether Rule 4(m) applies to these proceedings in light of the fact that service of process was attempted in 1991, two years prior to the rule change. If former Rule 4(j) still applies to this case and we conclude that the district court did not abuse its discretion in finding that there was no good cause shown for failing to timely serve Jake Diel, we would have no choice but to affirm the order of the district court dismissing this case. However, we are guided by the order of the Supreme Court which stated, "the foregoing

---

[6]. Normally, dismissing the case without prejudice or extending the time for service will have the same practical effect, assuming that the statute of limitations has not run. In either event, the plaintiff has the opportunity at the proverbial "second bite." If the case is dismissed, the plaintiff simply has to refile the complaint and thus becomes entitled to a new 120 day period within which to effect service of process. Similarly, if an extension of time is granted, then the plaintiff has the opportunity to effect service within the new time limit imposed by the court. The situation changes dramatically, however, when a case is dismissed, even without prejudice, and the statute of limitations has run. Here, the plaintiff is precluded from refiling the action. Thus, assuming good cause, dismissing a case without prejudice is not an appropriate remedy after the statute of limitations has lapsed.

amendments to the Federal Rules of Civil Procedure shall take effect on December 1, 1993, and shall govern . . . insofar as just and practicable, all proceedings in civil cases then pending."  See The Order of the United States Supreme Court Adopting and Amending the Federal Rules of Civil Procedure (April 22, 1993).  Because we believe it to be "just and practicable," we conclude that Rule 4(m) applies retroactively to these proceedings.

Determining that Rule 4(m) applies to the case before us does not, however, end our inquiry.  In this case of first impression before a federal Court of Appeals, we must decide the manner in which a district court should now proceed when employing a Rule 4(m) analysis.  Rule 4(m) states in relevant part:

> **Time Limit for Service**.  If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m) (1993) (emphasis added).  As mentioned previously, the former rule required the court to dismiss the case absent a showing of good cause.  We read the new rule to require a court to extend time if good cause is shown and to allow a court discretion to dismiss or extend time absent a

showing of good cause.  We reach this conclusion for several reasons.

Initially, we find that the plain language of the rule itself explains that in all cases, the court has the option of dismissing the action or extending time for service.  The fact that the word "shall" is used along with the disjunctive "or" in the first clause indicates that the court has discretion to choose one of these options.  As an exception to this general provision, the second clause notes that if good cause exists, the district court has no choice but to extend time for service. Thus, the logical inference that can be drawn from these two clauses is that the district court may, in its discretion, extend time even absent a finding of good cause.

Next, we find that the Advisory Committee note on the Rule 4(m) amendment to be instructive.  The Committee explained:

The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.

Fed. R. Civ. P. 4(m) advisory committee's note (1993) (emphasis added).  Thus, the "even if" language of the note indicates that

the district court may extend time for service where there is no good cause shown.

We hold that as a result of the rule change which led to Rule 4(m), when entertaining a motion to extend time for service, the district court must proceed in the following manner. First, the district court should determine whether good cause exists for an extension of time. If good cause is present, the district court must extend time for service and the inquiry is ended. If, however, good cause does not exist, the court may in its discretion decide whether to dismiss the case without prejudice or extend time for service.

The Advisory Committee note provides some guidance as to what factors the district court should consider when deciding to exercise its discretion to extend time for service in the absence of a finding of good cause. Although the list is not exhaustive, the Committee explained that, "[r]elief may be justified, for example, if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or conceals a defect in attempted service." Id. (citation omitted) (emphasis added).[7]

---

[7]. Some may interpret the Advisory Committee note as expanding the concept of good cause to include a greater number of situations where "relief may be justified." We decline to adopt such a position. Specifically, we are troubled by the language in the note which may be interpreted by some to mean that good cause exists every time the statute of limitations has run and the refiling of the action would be barred. We caution against such a myopic reading of the Advisory Committee note for several reasons.

First, when mentioning what "relief may be granted," the note refers back to a prior sentence which states that the rule "authorizes the court to relieve a plaintiff of the

We hold that a district court may not consider the fact that the statute of limitations has run until after it has conducted an examination of good cause.  If the district court determines that good cause does not exist, only then may it consider whether the running of the statute of limitations would warrant granting an extension of time.  We emphasize that the running of the statute of limitations does not require the district court to extend time for service of process.  Rather, absent a finding of good cause, a district court may in its discretion still dismiss the case, even after considering that

(..continued)
consequences of an application of this subdivision even if there is no good cause shown."  Thus, the examples of "relief" that are provided in the note should be factored into the analysis only after a determination has been made that good cause is lacking.  Second, the note indicates that "relief may be justified" if the statute of limitations has run.  If, in fact, the running of the statute constituted good cause, the district court would be required to grant relief.  Instead, here the Advisory Committee note indicates that granting relief is not mandatory.  Third, later in the same paragraph, the Advisory Committee refers to and describes "[a] specific instance of good cause."  If, in fact, the running of the statute of limitations was to be construed as a "specific instance of good cause," the Advisory Committee would have characterized it in the same manner.  Finally, holding that good cause exists any time the statute of limitations has run would effectively eviscerate Rule 4(m) and defeat the purpose and bar of statutes of repose.  Pursuant to Rule 4(m), if good cause is shown, the district court must extend time.  If we were to construe the Advisory Committee note as instructing a district court to find good cause whenever the statute of limitations has run, the district court would be obligated to extend time.  Instead of having 120 days within which to effect service of process, this reading of Rule 4(m) would extend both the 120 days and the statute of limitations of every cause of action indefinitely.

the statute of limitations has run and the refiling of an action is barred.[8]

We begin our inquiry into the proper resolution of this case by determining whether the district judge was correct in concluding that Petrucelli failed to establish good cause for not serving Jake Diel in a timely manner. Petrucelli contends that he has shown good cause for his failure to serve Jake Diel within the required time. We review the district court's determination that good cause has not been shown for abuse of discretion. Lovelace v. Acme Markets, Inc., 820 F.2d 81, 83 (3d Cir.), cert. denied, 484 U.S. 965, 108 S. Ct. 455 (1987); Braxton v. United States, 817 F.2d 238, 242 (3d Cir. 1987).[9]

Petrucelli argues that the following circumstances constitute good cause: (1) he was under the mistaken belief that the defendant had been served since he spoke to someone in the Office of the Secretary of State of Oklahoma via telephone and was verbally assured that proper service was effected; and (2) he

---

[8]. We express no opinion as to what factors, in addition to those listed in the Advisory Committee note, a district court may consider when deciding whether to extend time for service or dismiss a case. We simply note that because the statute of limitations would bar the refiled action here, it would be appropriate for the district court to consider this factor, assuming (as we later conclude) there is no showing of good cause.

[9]. The dissent argues that under Rule 4(m) the determination of good cause is a factual one to be reviewed by the clearly erroneous standard. We disagree. The good cause determination itself is still a discretionary judgment to be exercised by the district court. Thus, it is proper to review this decision for an abuse of discretion.

was told by APS that Jake Diel could not be served in Texas, but could only be served in Oklahoma. Petrucelli maintains that his and APS' errors in serving Jake Diel are attributable to the confusion caused by the change in the corporate name from Jake Diel to Excel.

Petrucelli, however, made several inexcusable errors. First, he unreasonably relied on a verbal assurance from some unknown individual in the Office of the Secretary of State of Oklahoma to the effect that Jake Diel had been served. Second, his attempted service included a Notice of Acknowledgement Form, which was never completed and returned. Petrucelli did not question why the acknowledgment form was not returned. A prudent attorney exercising reasonable care and diligence would have inquired into the matter further when it was obvious that the acknowledgment form was not forthcoming. Third, Petrucelli claims that sending a mailing to Texas would be pointless in light of the assurances from APS that Jake Diel was no longer doing business in Texas. However, Jake Diel (later renamed Excel) was continuously and without interruption doing business in the state of Texas from April 1, 1969 until the present. Fourth, the record is barren of any written inquiry made by the plaintiff of the Secretary of State of Oklahoma, or any response thereto, which would indicate whether Jake Diel was a corporation

in good standing in that state (or that it was previously a corporation in good standing whose charter had been revoked).[10]

We have previously held that reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service.  <u>Braxton</u>, 817 F.2d at 242.  We have also held that "`[h]alf-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run."  <u>Lovelace</u>, 820 F.2d at 84.  Even when delay results from inadvertence of counsel, it need not be excused.  <u>Id.</u>  Further, we have previously cautioned that, "`[t]he lesson to the federal plaintiff's lawyer is not to take any chances.  Treat the 120 days with the respect reserved for a time bomb.'"  <u>Braxton</u>, 817 F.2d at 241 (citation omitted).[11]

---

[10].    The certificate from the Oklahoma Secretary of State is dated March 19, 1992.  In August of 1991 Petrucelli could not have relied upon this document.

[11].  We recognize that both <u>Lovelace</u> and <u>Braxton</u> were decided under former Rule 4(j).  However, because of our earlier holding that the running of the statute of limitations is not an element of a good cause analysis, we are satisfied that the holdings of <u>Lovelace</u> and <u>Braxton</u> remain intact.  In fact, our analysis of Rule 4(m) in no way impacts any of our prior decisions that articulate the standard for good cause.  Rather, the change which exists in Rule 4(m) modifies the procedure employed by the district court after a determination as to good cause has been made.

The facts of this case are quite similar to Lovelace, where we found that it was inappropriate for plaintiff's counsel to rely upon verbal assurances of the process server where counsel was not in possession of any written proof of service. 820 F.2d at 84-85. Here, Petrucelli relied on the verbal assertions of an individual in the Office of the Secretary of State of Oklahoma. He failed to inquire further when the acknowledgment form was not received. Petrucelli cannot rely upon his belief that the defendant had been served when he had in hand no proof or indication of service. We conclude that the district court did not abuse its discretion in ruling that Petrucelli has not shown good cause for failing to timely serve the defendant.

Next, the district court must consider whether any other factors warrant extending time even though good cause was not shown. Because Rule 4(m) had not yet been adopted at the time the district court decided this issue, the district court was forced to dismiss this case after finding that no good cause existed and was prohibited from considering whether an extension of time should be granted despite a lack of a showing of good cause. Now, however, the district court is not faced with having to dismiss Petrucelli's case and is not prohibited from extending time for service.[12] Although the district court did not abuse

12. Subsequent to oral argument we received a motion from Jake Diel regarding Petrucelli's pleadings in a pending proceeding in which Petrucelli is plaintiff and his process server, APS, is defendant. Because we are limited to the extant record in Petrucelli's action against Jake Diel in this case, we cannot consider the material which Jake Diel now offers regarding

its discretion, in light of Rule 4(m), we will remand this issue to the district court to exercise its discretion as to whether the case should be dismissed or an extension of time granted within which service of process can be effected.

### C. Granting of Summary Judgment in Favor of Defendant Bohringer & Ratzinger

We exercise plenary review over the district court's grant of summary judgment and apply the same test employed by the district court. United States v. Capital Blue Cross, 992 F.2d 1270, 1271-72 (3d Cir. 1993). Summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Moreover, the mere existence of some evidence in support of the non-moving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). Where, as here, the non-movant bears the burden of proof on the issue which is the subject of the summary judgment motion, and is confronted by the movant's argument that the facts established through the discovery process do not support the claim, the party must

(..continued)
whether Petrucelli exhibited good faith in attempting to serve Jake Diel. The district court may in its discretion consider the arguments made in Diel's motion and in Petrucelli's response, if any. We express no view as to the merits of Diel's motion, which we deny without prejudice for the above reasons.

identify evidence of record sufficient to establish every element essential to the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986).

It is well established that federal courts sitting in diversity must apply the substantive law of the state whose law governs the action. Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S. Ct. 817, 822 (1938); Griggs v. Bic Corp., 981 F.2d 1429, 1431 (3d Cir. 1992). All parties agree that the substantive law of Pennsylvania applies to this litigation.

Petrucelli asserts a claim for: (1) negligence; (2) strict liability for failure to warn and/or design defect; (3) misrepresentation; (4) breach of express and implied warranties of fitness for purpose and merchantability; and (5) punitive damages.[13] In order for Petrucelli to prevail on this appeal, he must point to evidence which establishes every element of at least one of the above claims.

In order to defeat summary judgment on the negligence claim, Petrucelli must prove: (1) a duty requiring the defendant to conform to a certain standard of care; (2) failure to conform to such standard; (3) a causal connection between the failure to conform and an injury; and (4) actual loss or damage. Griggs, 981 F.2d at 1434 (emphasis added). A claim for strict products

_____

[13]. Petrucelli has not briefed nor argued on appeal that the district court erred in granting the motion for summary judgment with regard to the claim for punitive damages. Because plaintiff has not briefed this issue for appeal, he has waived review of that portion of the district court's decision. See Brenner v. Local 514, United Broth. of Carpenters, 927 F.2d 1283, 1298 (3d Cir. 1991).

liability has two elements: (1) that the product is defective; and (2) that the defect was a proximate cause of the injuries. Griggs, 981 F.2d at 1432 (emphasis added). In order to prevail on a claim of misrepresentation, Petrucelli must prove: (1) justifiable or reasonable reliance; and (2) a causal connection between the representations and the alleged harm. Gunsalus v. Celotex Corp., 674 F. Supp. 1149, 1159 (E.D. Pa. 1987) (emphasis added).

All three of the above claims require a causal connection between the wrongful act and the alleged harm. As we have noted, Bohringer manufactured the rotor crusher, but Petrucelli's arm was amputated in the discharge conveyor. Although the rotor crusher and the discharge conveyor were both part of the same recycling machine, there were three independent components between the rotor crusher and the discharge conveyor. It is uncontradicted that the component part (the rotor crusher) manufactured by Bohringer was not involved in Petrucelli's accident. There being no causal relationship between Bohringer's product and the accident, Bohringer cannot be held liable on a theory of negligence, strict products liability, or misrepresentation. In short, one of the necessary elements of these claims, causation, is not present.

The district court properly made findings that Petrucelli has offered no evidence of an express warranty. As such, we will only consider the claim of breach of implied warranties of fitness and merchantability. An implied warranty of fitness for a particular purpose applies "[w]hen the seller at

the time of contracting has reason to know: (1) any particular purpose for which goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods."  13 Pa. Cons. Stat. Ann. § 2315 (1984). The Pennsylvania Commercial Code provides that an implied warranty of merchantability requires that the product be "fit for the ordinary purposes for which such goods are used."  13 Pa. Cons. Stat. Ann. § 2314(b)(3) (1984).  Moreover, in order to prevail under Pennsylvania law on a claim for breach of either warranty of fitness for a particular purpose or warranty of merchantability, a plaintiff must show that the product was defective.  Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992).

Petrucelli alleges that the rotor crusher was defective since (1) it lacked adequate warning systems which would alert, by sounding an alarm or a bell, personnel in the proximity of the recycling machine prior to the machine actually starting movement and (2) the design and location of the control booth did not allow adequate visibility of the component parts of the recycling machine.

Under Pennsylvania law, it is recognized that a manufacturer's duty to warn is limited when it supplies a component of a product that is assembled by another party and the dangers are associated with the use of the finished product. Jacobini v. V. & O. Press Co., 527 Pa. 32, 39, 588 A.2d 476, 478 (Pa. 1991) (citing Wenrick v. Schloemann-Siemag Aktiengesellschaft, 523 Pa. 1, 9, 564 A. 2d 1244, 1248 (1989)).

The court in Jacobini reasoned that the manufacturer of the component part cannot be expected to foresee every possible risk that might be associated with the use of the completed product and to warn of dangers in using that completed product.  Id. at 40, 588 A.2d at 480.

Nevertheless, it is possible under certain circumstances for a component manufacturer to be held liable for a failure to warn.  For example, in one case, a plaintiff was severely injured after diving into a shallow pool.  Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 112 (3d Cir. 1992).  He contended that the pool and the replacement pool liner were defective because they did not have depth markers or "No Diving" warnings.  In holding the pool liner manufacturer liable, we concluded that since the pool liner manufacturer knew that its product would ultimately be incorporated into a pool, the potential risk of failing to affix warning labels was reasonably foreseeable.  Id. at 118.

Thus, the question before us is whether it is reasonably foreseeable to a component manufacturer that failure to affix warning devices to its product would lead to an injury caused by another component part, manufactured by another company, and assembled into a completed product by someone other than the initial component manufacturer.  We conclude that Bohringer could not be expected to foresee that failure to affix alarms or bells on the rotor crusher would lead to someone being injured by the discharge conveyor, another component part of the recycling machine.  Thus, we do not accept Petrucelli's argument

that Bohringer had a duty to warn about the dangers of rotor crusher. Therefore, Petrucelli has failed to prove the rotor crusher was defective for failure to warn of possible injury.

Next, Petrucelli argues that there was a design defect because the control booth was placed in a such a manner that a full view of the discharge conveyor was obstructed. We do not agree. Petrucelli has offered no evidence refuting Bohringer's position that it did not manufacture the control booth and did not provide mechanisms to attach it to the rotor crusher. In addition, Petrucelli failed to contradict evidence that Jake Diel had previously placed control booths for other companies in similar locations even prior to its use of Bohringer rotor crushers, and would place the control booth in any location according to the demands of the customer. We conclude that plaintiff has failed to present sufficient evidence to support his claim of breach of warranty of fitness and merchantability.[14]

### D. Denial of Motion to Compel Discovery

Petrucelli argues that the district court erred by not allowing him to adopt, as his own, the discovery request that Excel as third-party defendant served upon Bohringer.[15] Petrucelli contends that he was implicitly given permission to

---

[14]. Additionally, Petrucelli has failed to present sufficient evidence of the statutory elements to support his claim of implied warranty of fitness. There is, in fact, no evidence that he relied at any time on the skill or judgment of Bohringer.

[15]. As noted in supra note 2, since December 29, 1992, pursuant to a name change, Jake Diel is now known as Excel, and we will refer to it as such.

adopt the interrogatories and request for production of documents that Excel served on Bohringer because no objections were filed to his attempted adoption. Furthermore, he speculates that if his motion to compel had been granted, he would have discovered the evidence necessary to preclude the grant of summary judgment in favor of Bohringer.

In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent. Fed. R. Civ. P. 37(a)(2)(A)[16] The district court concluded that Petrucelli was less than diligent in his discovery requests. The district court found that interrogatories and a request for documents were served on Bohringer by Excel in May of 1992. Yet, the record is devoid of any indication of discovery requests served by Petrucelli. In September and October of 1992, representatives of Excel and Bohringer were deposed, during which time Petrucelli deposed a representative of Bohringer for forty-five minutes. Petrucelli's contention that the grant of his motion to compel would produce evidence sufficient to preclude summary judgment in favor of Bohringer is suspect in light of the fact that Petrucelli had upwards of two years to conduct discovery during which time his discovery consisted solely of this one deposition. In February of 1993, almost ten months

---

[16]. Rule 37(a)(2)(A) of the Federal Rules of Civil Procedure states in relevant part:

The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.

after Excel served discovery requests on Bohringer, Petrucelli sent a letter to Bohringer's attorney seeking, first, to receive responses to the discovery requests Excel served in May of 1992, and second, purporting to adopt the discovery requests that Excel served on Bohringer. This was Petrucelli's only attempt to seek discovery; he initiated no independent, direct discovery requests of Bohringer. On June 14, 1993, Bohringer filed its motion for summary judgment and on June 28, 1993, Petrucelli filed his motion to compel discovery.

The district court concluded that Petrucelli failed to comply with Rule 29 of the Federal Rules of Civil Procedure which requires a written stipulation when modifying procedures governing discovery. Moreover, in addition to not complying with the rule, Petrucelli was lax in not attempting to adopt the discovery requests until February of 1993, almost ten months after Excel served the request. Furthermore, the district court observed that Petrucelli did not file his motion to compel discovery proactively but instead waited until after Bohringer had first filed its motion for summary judgment (some four months after Petrucelli attempted to adopt the discovery requests previously served by Excel).

We apply the abuse of discretion standard when reviewing orders regarding the scope and conduct of discovery. Beard v. Braunstein, 914 F.2d 434, 447 (3d Cir. 1990) (citations omitted). After a thorough review of the record, we conclude that the district court did not abuse its discretion in denying Petrucelli's discovery requests. First, Petrucelli never

forwarded interrogatories, nor a request for production of documents, to Bohringer.  Thus, pursuant to Rule 37, the prerequisite for compelling discovery was never fulfilled.  Second, there was never any written agreement between counsel by which Petrucelli could adopt Excel's discovery requests of Bohringer.  We observe, as did the district court, that plaintiff has failed to comport with Rule 29 of the Federal Rules of Civil Procedure which requires a written stipulation when modifying procedures governing discovery.  Third, this case had been ongoing for over twenty-six months at the time that Bohringer filed its motion for summary judgment.  At no time during this period did Petrucelli forward any discovery requests to Bohringer.  We will therefore affirm the order of the district court denying the motion to compel discovery.[17]

### III.

A default judgment against Jake Diel could not be entered since the complaint was never served.  Thus, we will affirm the order of the district court denying plaintiff's motion seeking a default judgment.  We will also affirm the decision of the district court which concluded that Petrucelli has failed to demonstrate good cause in not timely serving Jake Diel.  However,

---

[17].  We also note that plaintiff has failed to comply with Local Rule of Civil Procedure 24(f) of the Eastern District of Pennsylvania which states that, "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery or pursuant to this rule shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute."

in light of Rule 4(m), we will remand Petrucelli's motion to extend time for service to the district court for further consideration in light of our above analysis.  Summary judgment was properly entered in favor of Bohringer on all of plaintiff's claims against it, as there was no genuine issue of fact in dispute.  Therefore, we will affirm the order of the district court granting summary judgment to Bohringer.  Finally, since the district court did not abuse its discretion in monitoring discovery, we will affirm the order of the district court denying plaintiff's motion to compel discovery.

David Petrucelli; Tracy A. Petrucelli, Husband and Wife v. Bohringer and Ratzinger, GMBH Ausdereitungsanlagen; Jake Diel Construction Machine, Inc.; Teco Electric and Machine Company, Ltd. v. Excel Recycling & Manufacturing, Inc., No. 94-1425

BECKER, Circuit Judge, Concurring and Dissenting.

I agree that summary judgment was properly granted to Bohringer and Ratzinger, and that the motion to compel discovery was properly denied, and hence I join in Parts IIA, C & D of the majority opinion. I also agree that the motion for default judgment was properly denied. I cannot, however, join fully in Part IIB because I believe that good cause to extend the time for service of process beyond 120 days was present in this case, and hence I would remand with instructions to grant the 120 day extension.[18]

---

[18]. The majority reviews the district court's decision as to the presence of good cause under an abuse of discretion standard. I do not believe the adoption of such a standard satisfactorily accommodates the Congressional enactment of Rule 4(m). Under the former Rule 4(j), the decision whether to extend the time for service, while predicated on the existence of good cause, was solely entrusted to the district judge's discretion. Importantly, under the Rule 4(j) regime, what the reviewing court did was to analyze the district court's entire decision whether to extend the time for service or to dismiss the action. Correspondingly, the appellate review of the district court's decision under Rule 4(j) was appropriately conducted under an abuse of discretion standard. See Lovelace v. Acme Markets, 820 F.2d 81, 83 (3d Cir. 1987), cert. denied 484 U.S. 965 (1987); Braxton v. United States, 817 F.2d 238, 242 (3d Cir. 1987).

However, as the majority correctly recognizes, under Rule 4(m) the inquiry is divided into two steps. If, as a factual matter, good cause is found, the district court is duty-bound to extend the time for service; in the absence of good cause, the district court has discretion as to whether or not to dismiss or extend the time for service. Given this regime, the majority's

I.

In determining whether Petrucelli has set forth a showing of good cause, the majority measures the action of Petrucelli and his counsel against the principles laid down in Lovelace and Braxton.  See Lovelace v. Acme Markets, 820 F.2d 81 (3d Cir. 1987), cert. denied 484 U.S. 965 (1987); Braxton v. United States, 817 F.2d 238 (3d Cir. 1987).  Those cases also involved instances where plaintiff's failure to properly execute service resulted from counsel's ill-advised reliance on representations made by an employed process server.  Braxton, 817 F.2d at 242 ("The facts, therefore, present a scenario of unexplained delinquency on the part of the process server and lack of oversight by counsel."); Lovelace, 820 F.2d at 84 (finding "misplaced reliance upon the word of the specially-appointed process server").  In my view, additional factors which present a clearer showing of good cause take this case out of the

(..continued)
review of both decisions for an abuse of discretion is anomalous. While the district court's latter decision should be reviewed for an abuse of discretion, it appears that the good cause determination itself has become a purely factual one, which should appropriately be reviewed under a clearly erroneous standard, since under the first step of the Rule 4(m) analysis the district court has no discretion.
    In sum, this Congressionally mandated schema leaves no alternative but to review the district court's good cause determination under a clearly erroneous standard. Notwithstanding this concern, I do not believe the distinction is outcome determinative here, for I would conclude that the district court erred in finding that Petrucelli failed to present a showing of good cause under either a clearly erroneous or an abuse of discretion standard of review.

<u>Braxton/Lovelace</u> category, and more closely align it with our later opinion in <u>Consolidated Freightways v. Larson</u>, 827 F.2d 916 (3d Cir. 1987), <u>cert.</u> <u>denied</u> 484 U.S. 1032 (1988).

In defining the scope of the "good cause" exception, we have equated it with the concept of "excusable neglect" of Fed. R. Civ. P. 6(b)(2). <u>Dominic v. Hess Oil</u>, 841 F.2d 513, 517 (3d Cir. 1988); <u>see also</u> 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 4.18[2] (2d ed. 1994) ("As for Rule 6(b)(2), there would seem to be no practical difference between good cause for not serving process and failure to serve process through excusable neglect."). Indeed, Petrucelli has requested an extension of time under Rule 6(b)(2), which requires the district court to grant an extension of time, "where the failure to act was the result of <u>excusable neglect</u>." Fed. R. Civ. P. 6(b)(2) (emphasis added). We have described excusable neglect as requiring "'a demonstration of good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified in the rules.'" <u>Hess Oil</u>, 841 F.2d at 517 (quoting Wright & Miller, FEDERAL PRACTICE AND PROCEDURES, § 1165 (1987)). Both elements are present in this case.

II.

By all accounts, Petrucelli has acted in good faith. In addition, Petrucelli has provided two reasonable bases, of a type not present in either <u>Braxton</u> or <u>Lovelace</u>, for his counsel's noncompliance: (1) his counsel's difficulty in locating the

defendant, Jake Diel Corporation, now Excel ("Jake Diel") within 120 days resulted from the corporation's recent name change to Excel; and (2) the office of the Secretary of State of Oklahoma had informed counsel that service of the defendant could be effectuated through that office.

Petrucelli and his counsel were initially under the impression that Jake Diel was a Texas Corporation. App. at 66. However, when they were unable to find a listing for Jake Diel in Texas, they turned their attention to the records of the neighboring state of Oklahoma. App. at 61-70. When they made inquiry, officials in the office of the Oklahoma Secretary of State stated that Jake Diel was listed to do business in Oklahoma and that service could be effected through their office as Jake Diel's agent. App. at 33. The Oklahoma officials also stated to counsel that their records reflected that Jake Diel had been ousted by the Secretary of State of Texas on 11/1/91 for failure to file the necessary reports. App. at 32. In response, Petrucelli's counsel acting through process server, APS International, Ltd., effected mail service upon the Secretary of State of Oklahoma, who shortly thereafter informed them that Jake Diel had been served via certified mail. App. at 33. It was only after the 120 day time period had run that Petrucelli's counsel realized that the defendant had not in fact been validly served through the Oklahoma Secretary of State. App. at 34; 67-68.

The majority contends that "the record is barren" of any correspondence with the Oklahoma Secretary of State to support Petrucelli's contention of excusable neglect. Maj. Op. at 16. I disagree. Attached to this dissent is a certificate from the Oklahoma Secretary of State received by Petrucelli certifying its acceptance of plaintiff's service of process on Jake Diel's behalf. App. at 69. While the majority correctly points out that Petrucelli's counsel failed to receive Form 18-A (as is required to effectuate service made pursuant to FRCP 4(C)(2)(c)(ii)), I do not believe that such a mistake vitiates the presence of good cause under the circumstances of this case. At all critical times, counsel was under the impression that the defendant could have been and was served through the Oklahoma Secretary of State.

In my view, the conduct of Petrucelli's counsel is more analogous to the conduct of counsel in Consolidated Freightways Corp. v. Larson, 827 F.2d at 919, than in Braxton or Lovelace. In Consolidated Freightways we distinguished both Braxton and Lovelace and found that the district court had abused its discretion by failing to find excusable neglect where an attorney's clerical error resulted in a failure to file a timely notice of appeal, holding that such an error was excusable neglect since,

> counsel's error was not the result of professional incompetence; that counsel is not attempting to create a facile excuse by which to extend the time for appeal, indeed counsel gained no advantage by the

> misdirection; and that the type of human
> error here involved, though certainly
> avoidable, is neither readily foreseeable nor
> capable of anticipation by counsel.

Consolidated Freightways, 827 F.2d at 919-20. I find this
analysis to be applicable here. Petrucelli's counsel's failure
to locate the defendant within 120 days, while avoidable, was not
sufficient to justify denying Petrucelli his day in court. See
Wright & Miller, supra, at § 1137 ("If good cause is measured too
restrictively, then too many good faith plaintiffs may be treated
harshly.").

Essentially, the reason Petrucelli was unable to
properly effectuate service was that the defendant had changed
its name from Jake Diel to Excel. The question of the role of a
defendant's name change in a finding of good cause was not
addressed by the Braxton and Lovelace panels and has, to date,
never been addressed by this court.[19] While as the majority
points out, it might have been possible for counsel to have
located the defendant through certain sophisticated searches the
failure to do so does not constitute inexcusable neglect
considering counsel's good faith efforts.

Petrucelli's counsel, acting through APS International,
searched the Texas corporate records for a Jake Diel Corporation

---

[19]. Moreover, there is no reported federal opinion addressing
such a situation absent evidence of intentional evasion of
service. See, e.g. Ruiz Varela v. Sanchez Velez, 814 F.2d 821
(1st Cir. 1987) (remanding to the district court to reconsider
the plaintiff's claim of good cause).

and understandably was not able to locate the address of the re-named defendant.  App. at 66.  The Consolidated Freightways panel distinguished Braxton on similar grounds -- the presence of a good faith effort on the part of counsel to comply with the procedural time limit.  See Consolidated Freightways, 827 F.2d at 921 ("Unlike the attorney in Braxton, counsel in this matter made substantial good faith efforts to comply."); see also PaineWebber Inc. v. Hartman, 921 F.2d 507 (3d Cir. 1990) (reversing a district court's denial of an extension of time as an abuse of discretion where "the notice of appeal was untimely despite counsel's diligent efforts at compliance").

Moreover, the facts of this case present an even more compelling instance of excusable neglect than even Consolidated Freightways, for there the failure to file a timely appeal was the result of a clerical error made by counsel or someone under counsel's control.  In this case, the plaintiff was misled into believing that service could be made in Oklahoma not only by their hired process server, but by the Oklahoma Secretary of State, who indicated that service of process could and had been made on the defendant through that office.  In support of this reliance, Petrucelli points to his statement to the district court during the 120 day period that Jake Diel had been served, made in connection with his request for an extension of time in order that proper service could be effectuated under

international law upon the German-based defendant, Bohringer & Ratzinger. App. at 141-45.

In discounting Petrucelli's reliance on representations made by the Oklahoma Secretary of State's office, the majority equates reliance on representation made by a hired process server with representations made by a government official. In support of this proposition the majority relies on an overly broad reading of Braxton, concluding that "we have previously held that reliance upon a third party or on a process server is an insufficient basis... for granting an extension of time to effect service. Braxton, 817 F.2d at 242." Maj. Op. at 16 (emphasis added). But Braxton dealt with representations made by a process server hired by an attorney, and does not deal with, or even mention, representations by "third parties." It would be astonishing indeed if Braxton stood for the proposition that any reliance on third parties, including government officials holding themselves out as agents of a defendant, would not suffice to establish good cause.

In addition, defendant Jake Diel was not prejudiced, because it had actual notice of the commencement of the litigation through the service of the cross-claim by the co-defendant, Bohringer & Ratzinger. The First Circuit has recognized the danger of applying the service of process time period "harshly and inflexibly," in the absence of prejudice to the defendant. U.S. v. Ayer, 857 F.2d 881, 885-86 (1st Cir.

1988) ("Congress, we believe, intended Rule 4(j) to be a useful tool for docket management, not an instrument of oppression."). As was true in Ayer, this case presents "no meaningful demonstration of any cognizable prejudice resulting to defendants from the passage of additional time." Id. In the absence of prejudice, Petrucelli's failure to locate defendant Jake Diel, given its change in name and the misleading representations by government officials, constitutes good cause.

III.

For the foregoing reasons, I conclude that the district court erred in failing to extend for good cause the time for service. As I see it, the majority gives a narrow and wooden reading of good cause which might deny the plaintiff, who lost his left arm in an accident involving Jake Diel's machine, from pursuing his claim against a defendant who had actual notice of the suit. As Justice Black reminded us, some 40 years ago, the "principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts." Order Adopting Rules of the U.S. Supreme Court, 346 U.S. 945, 946 (April 12, 1954). Considering the substantial good faith efforts of Petrucelli's counsel to serve the defendant in this action, I believe that good cause to extend the time for service of process beyond 120 days is present. I would therefore reverse and remand with instructions to grant an extension of 120 days within which to

effect service on defendant Jake Diel.  To that extent, I respectfully dissent.