**GOLD KIST, INC.**

v.

**LAURINBURG OIL COMPANY, INC. and McNair Evans, Appellants.**

**No. 84–1187.**

United States Court of Appeals, Third Circuit.

Argued Nov. 1, 1984.

Decided March 4, 1985.

---

Guy A. Cellucci (argued), White & Williams, Philadelphia, Pa., for appellee.

John E. McKeever (argued), Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants.

Before GARTH and SLOVITER, Circuit Judges, and BARRY, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

The district court denied defendants' motion to set aside a default judgment entered as to them on March 8, 1983. Because the entry of the default judgment was unauthorized and improper, the court erred in refusing to set it aside.

### I.

The genesis of the dispute between the parties is the claim of plaintiff Gold Kist, Inc. that C.F. Simonin's Sons, Inc. owed it $114,707.65, the contract price for peanut oil sold by Gold Kist and delivered to Simonin. Gold Kist filed suit for breach of contract in the United States District Court for the Eastern District of Pennsylvania invoking diversity jurisdiction (the *Simonin* action). In August 1982, the parties agreed to settle the *Simonin* action for $115,000 to be paid in monthly installments, although they continued to negotiate about some aspects of the settlement. Under Gold Kist's version of the facts, it gave up its demand for a judgment to be entered against Simonin in the amount of the settlement and agreed to dismiss the complaint with prejudice in exchange for obtaining guarantee agreements from Laurinburg Oil, a parent company of Simonin, and McNair Evans, a principal officer and director of Simonin. Laurinburg Oil and Evans, on the other hand, maintain that it was Gold Kist which sought to add additional terms to the settlement, and that the only guarantee promised was a contingent guarantee of Laurinburg Oil.

The settlement agreement was executed by Simonin, but was returned to Gold Kist without the guarantee agreements of Laurinburg Oil and Evans. Despite repeated assurances by Simonin's counsel that they would be forthcoming, ultimately he in-

---

* Hon. Maryanne Trump Barry, United States District Court for the District of New Jersey, sitting by designation.

formed Gold Kist that Evans would not provide a guarantee and that Laurinburg Oil would provide one only if it were accepted in lieu of receiving both guarantees.

Two days later, on November 5, 1982, Gold Kist filed this diversity action against Laurinburg Oil and Evans alleging breach of their agreement to guarantee Simonin's payment of the settlement. The complaint asserted breach of contract, promissory estoppel and common law fraud. The district court granted Gold Kist's motion for special appointment to serve process and ordered that proof of service be made by affidavit in accordance with Rule 4(g) of the Federal Rules of Civil Procedure.

At a conference with the district court on November 23, 1982, counsel in the *Simonin* action agreed that judgment would be entered against Simonin pursuant to the pay-out schedule previously agreed upon. They also agreed that simultaneously this action against Laurinburg Oil and Evans would be dismissed without prejudice, but that Gold Kist could reinstate it if Simonin defaulted. The following day, November 24, 1982, before the agreement of the parties had been reduced to writing and without advising the parties, the district court entered an order dismissing the case "pursuant to agreement of counsel." The parties then prepared a stipulation of dismissal in the *Simonin* action which the court entered on December 15, 1982. The stipulation provided that "neither counsel for C.F. Simonin's nor C.F. Simonin's itself in any way represents or controls McNair Evans or Laurinburg Oil...."

On February 17, 1983, counsel for Gold Kist requested reinstatement of this action pursuant to the terms of the December 15 stipulation of dismissal because Simonin failed to make the payment due January 31, 1983. The district court granted the request by order dated March 7, 1983. The next day the clerk, on the request of Gold Kist's attorney, entered a default against the defendants for failure to answer, move, or otherwise respond to the complaint. Also on March 8, the court, again at Gold

Kist's request, entered default judgment in the sum of $90,000.

Laurinburg and Evans moved to set aside the default judgment pursuant to Fed.R.Civ.P. 55(c) and 60(b), arguing that the default was improperly entered because the requisite time to respond had not passed. In their proffered answer to the complaint, attached to the motion, the defendants asserted that the court lacked in personam jurisdiction, that they never guaranteed the obligations of Simonin, that counsel for Simonin lacked authority to make representations on their behalf, that Evans always stated that he would not personally guarantee the obligation of Simonin, that the entry of judgment against Simonin resulted in a failure of consideration for Laurinburg's promise to guarantee Simonin's obligation since that promise was contingent on no judgment being entered, that the claim was barred by the statute of frauds, and that service of process was insufficient. The district court denied the motion and this appeal followed.

## II.

In support of their motion to set aside the default judgment, defendants contended that entry of the default judgment against them was improper because the twenty day period for filing the answer had not expired. The twenty-day period begins to run from the time the complaint is served. Fed.R.Civ.P. 12(a). The amended return of service shows that the earliest date on which the complaint could have been found to have been served was November 10, 1982. The action was dismissed by court order on November 24, after passage of only fourteen days. The action was reinstated by court order dated March 7, 1983; the order granting default judgment was dated March 8, 1983 and entered March 9, 1983. Thus, even if the requisite time to respond were measured from the original filing of the complaint rather than from its reinstatement, the complaint was pending only for a total of fifteen days.

The affidavit of Gold Kist's attorney, which was the basis for entry of the de-

fault and default judgment, averred that the twenty day period for responding to the complaint expired on December 1, 1982. Counsel was apparently unaware that the case was no longer pending on that day. In any event, since there was an understanding by at least November 23, 1982 that this action would be dismissed, and the court was so notified on that day, obviously no party anticipated or expected that an answer would be filed. Had it been proffered on December 1, 1982, it is unlikely that it would have been accepted for filing given the dismissed status of the case. In these circumstances, the computation of time for filing an answer must begin on March 7, 1983, when the complaint was reinstated.

In rejecting defendants' argument that the time for filing an answer had not expired, the district court stated:

> The defendants were aware that a default by Simonin had taken place [on January 31, 1983], and they had ample time to procure the services of an attorney and to serve an answer to the complaint in the case *sub judice*. Accordingly, it would constitute an abuse of the judicial process to hold that the twenty day period had not expired prior to the entry of the default judgment on March 8, 1983 where the defendants were aware that Simonin's failure to meet its payment obligations to Gold Kist required them to answer the complaint.

This analysis is faulty. In the first place, there was no case *sub judice* until the complaint was reinstated. Although Gold Kist asked the district court on February 17, 1983 to reinstate the action immediately, inexplicably the court failed to do so until March 7, 1983. Again, proffer of an answer would have been unavailing before the complaint was reinstated.

In the second place, we know of no rule, precedent, or rationale which imposes on a party the obligation to file a pleading before it is due based solely on the party's knowledge of the likelihood that certain legal action will be forthcoming. The prescription of specific periods of time for designated actions contained in the procedural rules serve to give the parties notice of when they are required to act. A district court may not disregard these time periods because it is impatient with a party's behavior. Significantly, a court may for good cause enlarge the time allowed under certain rules, *see* Fed.R.Civ.P. 6(b), but there is no comparable provision for decreasing the time. Thus, whatever knowledge defendants may have had of Simonin's default cannot be used to accelerate the time provided by the rules in which to respond to the complaint. Defendants were entitled to rely on the time to respond set forth in Rule 12(a). Even if the original complaint had been adequately served, the one day that intervened between its reinstatement and the default judgment was patently inadequate.

Next, we turn to defendants' argument that the court lacked in personam jurisdiction to enter a default because the defendants were never properly served with the complaint. Gold Kist contends that process was served upon defendants in the manner prescribed by the law of the forum state, as permitted under the then applicable Fed.R.Civ.P. 4(d)(7), now contained in Fed.R.Civ.P. 4(c)(2)(C)(i). The summons and complaint were sent to both defendants at their North Carolina addresses by certified mail on November 8, 1982. Delivery was attempted on November 10, 1982, and November 17, 1982, but this was unsuccessful and the papers were returned unclaimed on November 25, 1982.

Both the district court and Gold Kist relied on the following provision of the Uniform Interstate and International Procedure Act, adopted by Pennsylvania, to sustain the services in this case:

> (a) *Manner of Service* When the law of this Commonwealth authorizes service of process outside this Commonwealth, the service, when reasonably calculated to give actual notice, may be made:
>
> .    .    .    .    .
>
> (3) By any form of mail addressed to the person to be served and requiring a signed receipt ...

(b) *Proof of Service* ... When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal.

42 Pa.Cons.Stat.Ann. § 5323.

It is undisputed that in this case no receipt was signed by the addressees. Gold Kist contends that the circumstances reveal that Evans and Laurinburg were aware of the lawsuit and therefore must have received copies of the complaint, and that Simonin's attorney concedely received a copy of the complaint on November 5 and sent it by express mail on November 8 to Simonin's attorney in North Carolina. Neither attorney was authorized to accept service for these defendants. Thus, nothing in the record provides the evidence of personal delivery required by § 5323(b).

Gold Kist suggests that appellants intentionally refused to pick up the certified mail in an attempt to avoid service of process and the jurisdiction of the court. The district court relied on our decision in *Stateside Machinery Co. v. Alperin*, 591 F.2d 234 (3d Cir.1979), where we held that service by registered or certified mail, returned unclaimed, adequately satisfied the then applicable Pennsylvania statute that provided: "if the defendant refuses to accept the notice mailed, or cannot be found at his last known address, the registered or certified mail return receipt or other evidence of such facts ... shall constitute sufficient service under the provisions of this section." 42 Pa.Cons.Stat.Ann. § 8307 (Purdon Supp.1978), *repealed by* Judiciary Act, 1976 Pa.Laws 586, 606, § 1 and Judiciary Act Repealer Act, 1978 Pa.Laws 202, 348, § 2(a). The district court failed to recognize the import of the repeal of the

statute construed in *Stateside* and the new procedure established. In the Explanatory Note to Rule 2079 of the Pennsylvania Rules of Civil Procedure, the Civil Procedure Rules Committee explained that Pennsylvania promulgated that rule because "subdivisions (a), (b) and (c) of Sec. 5323 of the Judicial Code makes no express reference to a provision for the common situation where registered or certified mail requiring the personal signature of the defendant is refused." The purpose was to provide somewhat more flexible rules for service of process than those provided by section 5323. Rule 2079(c)(3) provides for service

by registered letter ... addressed to the last known address of the defendant and requiring a receipt signed by the defendant. If the letter is returned by the post office without a receipt signed by the defendant but with notation by the postal authorities that the defendant refused to accept the letter, the plaintiff shall have the right of service by ordinary mail addressed to the defendant at the same address, with the return address of the sender appearing thereon; ...

Pa.R.Civ.P. 2079(c)(3). *See also* Pa.R. Civ.P. 2180(c)(2).

■ Gold Kist admits it never exercised the right to serve the summons and complaint by ordinary mail. It is evident that Pennsylvania intends that Section 5323 of the Judicial Code and Rule 2079 be considered in tandem. Since Gold Kist did not avail itself of the procedure provided by Rule 2079, we need not consider whether under the circumstances in this case, defendants' failure to claim the notices was the equivalent of refusing the mail.[1] The district court erred in rejecting defendants'

---

1. Although defendants contend that Rule 2079(c)(3) can never apply when mail is unclaimed as distinguished from directly refused, that appears to be an unduly restrictive approach. There are situations where the failure to claim mail may be tantamount to a refusal, and we see nothing in the legislative history that suggests Pennsylvania would not authorize service by ordinary mail under Rule 2079 in such a circumstance. We note that in *Harris v. Kaulius*, 18 Pa.D. & C.3d 636 (1981), the court construed Rule 2079(c)(3) to require an intentional refusal as distinguished from the failure to claim mail because of defendant's absence from the premises.

challenge to the service of the original summons and complaint. A default judgment entered when there has been no proper service of the complaint is, *a fortiori*, void, and should be set aside. *See* Rule 60(b)(4).

In this court, it is well established that a district court ruling on a motion to set aside a default under Rule 55(c) or a default judgment under Rule 60(b)(1), must consider the following three factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984); *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir.1984); *Gross v. Stereo Component Systems, Inc.*, 700 F.2d 120, 122 (3d Cir.1983); *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir.1982); *Farnese v. Bagnasco*, 687 F.2d 761, 764 (3d Cir.1982). In this case, the district court failed to follow this format. However, it is not necessary for us to resort to an analysis of those factors in this case because they apply only when the default judgment was authorized and the only question before the district court is whether to exercise its discretion to set aside the default. Obviously, if the default judgment was improperly entered, the district court erred as a matter of law in refusing to set it aside. We have found that because the time for filing an answer had not expired, and because there is no evidence that the complaint was properly served, the default and the default judgment were improperly entered.

### III.

Accordingly, the district court's denial of the motion to set aside default judgment will be reversed, and the case will be remanded for further proceedings consistent with this opinion.

Each party to bear its own costs.