

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-24-2000

# United States v. One Toshiba Color Television

Precedential or Non-Precedential:

Docket 98-3578 & 983579

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. One Toshiba Color Television" (2000). *2000 Decisions.* Paper 109.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/109

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 24, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 98-3578 and 98-3579

UNITED STATES OF AMERICA

v.

ONE TOSHIBA COLOR TELEVISION; TWO ANSWERING
MACHINES; ONE HEALTH TECH COMPUTER
*Reginald McGlory, Appellant in No. 98-3578
*(Pursuant to Rule 12(a), F.R.A.P.)
(D.C. Civ. No. 90-cv-00138)

UNITED STATES OF AMERICA

v.

ASSORTED JEWELRY

*Reginald McGlory, Appellant in No. 98-3579
*(Pursuant to Rule 12(a), F.R.A.P.)
(D.C. Civ. No. 90-cv-00370)

On Appeal From the United States District Court
For the Western District of Pennsylvania
District Judge: Honorable D. Brooks Smith

Submitted Under Third Circuit LAR 34.1(a)
July 13, 1999

Before: BECKER, Chief Judge, ROTH and RENDELL,
Circuit Judges.

ARGUED EN BANC: November 8, 1999

Before: BECKER, Chief Judge, SLOVITER, MANSMANN
GREENBERG, SCIRICA, NYGAARD, ALITO, ROTH,
McKEE, RENDELL and BARRY, Circuit Judges.

(Filed May 24, 2000)

        MICHAEL A. YOUNG, ESQUIRE
          (ARGUED)
        165 Christopher Street
        New York, NY 10014

        Counsel for Appellant

        HARRY LITMAN, ESQUIRE
          (ARGUED)
        United States Attorney
        BONNIE R. SCHLUETER
        MARY McKEEN HOUGHTON,
         ESQUIRE
        Assistant United States Attorney
        633 United States Post Office and
         Courthouse
        Pittsburgh, PA 15219

        Counsel for Appellees

OPINION OF THE COURT

BECKER, Chief Judge.

In these consolidated appeals Reginald McGlory challenges the results of two forfeiture proceedings. The first appeal requires that we revisit the question of the notice that the United States must provide when it pursues forfeiture proceedings against the property of an incarcerated defendant in its custody. The second concerns the District Court's use of the doctrine of laches to prevent McGlory from challenging a forfeiture proceeding in which the notice given for the forfeiture is later discovered to be constitutionally inadequate.

2

In the first appeal, which concerns forfeiture of certain items of jewelry, the government directed notice by certified mail to the facility in which McGlory was incarcerated. McGlory maintains that he did not receive the notice, and that the government should have ensured that he received personal notification of the proceedings against his property. In United States v. McGlory, 202 F.3d 664 (3d Cir. 2000) (en banc), which involved different property of McGlory's that was subject to administrative forfeiture, this Court ruled that merely sending notice to the Marshals Service, in whose custody McGlory was held, did not satisfy the Constitution. We held that "at a minimum, due process requires that when a person is in the government's custody and detained at a place of its choosing, notice of a pending administrative forfeiture proceeding must be mailed to the detainee at his or her place of confinement." Id. at 674. We noted, however, that "[w]hether anything more is required is not presently before us." Id. This appeal squarely presents the question whether "more" is required. McGlory asks that we rule the judicial forfeitures at issue in this case invalid because he did not receive actual notice of the proceedings.

As in all cases in which proper notice under the Due Process Clause is at issue, the touchstone of analysis is whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust, Co., 339 U.S. 306, 314 (1950). The government urges that mailing a letter by first-class mail to the location of the interested party is always sufficient. McGlory, in contrast, argues that a higher standard should prevail when the party is held in custody by the same government that wishes to serve notice upon him. He maintains that the government was in the position to ensure actual notice of the proceedings. Such notice has been required by several of our sister circuits, most notably by the Second Circuit in Weng v. United States, 137 F.3d 709 (2d Cir. 1998).

Though there is much to recommend the actual notice standard when the United States Attorney is dealing with

federal prisoners and detainees, we are not prepared to require the government to bear the evidentiary burden of establishing actual notice in all cases. Such a 780<!>demonstration could impose needless litigation costs, especially if the due process challenge arises years after the conclusion of the initial proceedings. Moreover, the Supreme Court has never required the demonstration of actual notice. At all events, the jurisprudence of constitutional notice appropriately focuses not on what actually occurred, but rather on the procedures that were in place when notice was attempted. Evaluating the adequacy of these procedures requires consideration of the context in which they occur.

We conclude that the circumstances surrounding the federal government's incarceration of a prisoner require greater efforts at ensuring notice than would be expected for individuals at liberty in society. When one is in prison, the relative difficulty to the government to effect actual notice is reduced, while the ability of prisoners to ensure that they receive notices directed to them suffers. However, we stop short of the Weng standard and adopt an approach that focuses on the extent that procedures are reasonably likely to effect actual notice. Under this regime, the government's obligations do not end at the mailbox. Rather, we hold that if the government wishes to rely on direct mail, it bears the burden of demonstrating that procedures at the receiving facility were reasonably calculated to deliver the notice to the intended recipient. On this record, we cannot determine whether such a system was in place in McGlory's facility. We will therefore vacate the judgment and remand to the District Court for further factual findings on the sufficiency of the notice.

In the second forfeiture now before us, which concerns certain electronic equipment, the notice provided to McGlory concededly fell short of the constitutional minimum. The government contends, however, that McGlory's attempt to recover the forfeited property is barred by the doctrine of laches, and the District Court agreed. We conclude that the doctrine of laches should not be considered when the issue is whether a judgment is void. If McGlory unreasonably delayed in seeking the recovery of

4

his property, the proper time to raise the issue is in a proceeding in which he seeks recovery from the government. The District Court will have to consider whether such recovery is available by a motion to vacate that arises under Fed. R. Civ. Proc. 60(b) or if McGlory will have to proceed by other means. We will therefore vacate the District Court's judgment that McGlory's action was barred by laches.

I.

This is the third time that forfeitures of McGlory's property have come before this Court, and the facts surrounding his arrest and detention are described several times in the Federal Reporter, most recently in United States v. McGlory, 202 F.3d 664 (3d Cir. 2000) (en banc); see also United States v. $184,505.01, 72 F.3d 1160 (3d Cir. 1995); United States v. McGlory, 968 F.2d 309 (3d Cir. 1992) (upholding McGlory's criminal conviction and sentence). We therefore need not rescribe this story save for the highlights.

On September 8, 1989, Pittsburgh police officers and Drug Enforcement Administration agents arrested McGlory for conspiracy to possess heroin with intent to distribute. He was ultimately convicted of conspiracy to possess and distribute heroin, possession of heroin with intent to distribute, possession of a firearm by a convicted felon, use of a firearm in a drug trafficking operation, and laundering drug proceeds. He received a life sentence. On the date of his arrest, the officers searched several residences used by McGlory and seized numerous items of property, including, at issue in this appeal, one Toshiba color television set, two answering machines, one Health Tech computer, and assorted jewelry. In 1990, the United States Attorney instituted civil judicial forfeiture actions against these items under 21 U.S.C. S 881.

Until McGlory was sentenced on February 11, 1991, he was in the custody of the United States Marshals Service, and was housed in various detention facilities with which it had contracted. In initiating the forfeiture against the jewelry, the government mailed notice of the action to

5

McGlory care of the Ohio County Jail in Wheeling, West Virginia, where he was apparently being held at the time. The notice was received at the jail on November 9, 1990 and signed for by one of the jail's officers. The government also sent notice to the jail by regular mail and mailed notice by certified mail to one of McGlory's pre-incarceration residences. That letter was not accepted. Finally, the government sent notice to McGlory's ex-wife, and to an attorney by the name of William Magann,[1] and it published notice for three consecutive weeks in a general circulation newspaper. No one filed a claim or answer as directed by the notice to those seeking to contest the forfeiture. A default judgment was entered in the government's favor on January 7, 1991. The government ultimately sold the jewelry for $9,950.

The government also initiated forfeiture proceedings against the television set and the other equipment, mailing the notice to an address used by McGlory. The government also sent notice to McGlory's mother and Magann and published notice in a newspaper. This proceeding was resolved by default judgment in the government's favor on May 31, 1990.

McGlory maintains that he never received any notice, and he was unaware of any of the forfeiture proceedings until December 1993. On April 11, 1994, he filed a pro se motion pursuant to Fed. R. Crim. Proc. 41(e), seeking return of all the property that had been seized from him. The District Court dismissed the motion without prejudice on January 6, 1997, and McGlory promptly filed a motion to reconsider the denial of his 41(e) motion. Shortly thereafter, he filed a motion to vacate the judgments in the two earlier proceedings. The Magistrate Judge to whom the case was assigned concluded that no constitutional notice violation occurred in the jewelry forfeiture proceeding, but that there was a violation in the proceeding concerning the electronic equipment. Notwithstanding this conclusion, he recommended that this claim be dismissed based on the

_____

1. In proceedings below, McGlory claimed not to know who Magann is, and the government does not contend that he represented McGlory in this matter.

6

doctrine of laches because: (a) McGlory had inexcusably delayed seeking recovery of the property; and (b) this delay was prejudicial to the government. Relying on the 780<!>Magistrate Judge's report, the District Court denied

McGlory's motion to vacate the judgments on September 23, 1998. McGlory filed a timely notice of appeal.

The District Court had jurisdiction over the forfeiture proceedings under 28 U.S.C. SS 1331, 1345, and 1355, and over the motion to vacate judgment under 28 U.S.C. S 1331. We have jurisdiction to review the District Court's final order under 28 U.S.C. S 1291. Our review over constitutional issues is plenary, see United States v. Various Computers & Computer Equip., 82 F.3d 582, 589 (3d Cir. 1996), as is our review of the legal components of the laches issue, see Bermuda Express, N.V. v. M/V Litsa (Ex. Laurie U), 872 F.2d 554, 557 (3d Cir. 1989).

II.

The central issue in the appeal from the jewelry forfeiture is whether a pretrial detainee is entitled to actual notice of judicial forfeiture proceedings initiated against him.2 The District Court concluded that attempting service in jail via the mail satisfied constitutional requirements for the service of notice. It primarily relied upon two cases. First, it looked to our opinion in United States v. $184,505.01, 72 F.3d 1160 (3d Cir. 1995), another McGlory forfeiture case, which taught that the government must at least attempt service on an incarcerated defendant in the place where he is being detained. Second, it cited Herbert v. United States, 1996 WL 355333 (E.D. Pa. June 25, 1996), aff 'd without opinion, 103 F.3d 114 (3d Cir. 1996), which declared that notice to the prison in which the defendant was incarcerated met due process requirements. Because it was

_____

2. The relevant precedents in this area involve both judicial and administrative forfeitures. Insofar as both judicial and administrative forfeiture proceedings carry the potential to affect the property rights of
the owner, there would appear to be no reason to distinguish between the notice required by the Due Process Clause in the two situations. At all events, the issue presented in this appeal solely concerns judicial forfeitures.

7

not affirmed by a published opinion, Herbert  is not precedential under our Internal Operating Procedures. See, e.g., United States v. Breyer, 41 F.3d 884, 892 n.11 (3d Cir. 1994); IOP S 6.2.1 (2000 ed.). The District Court nevertheless reasoned that the two cases indicate that, in this circuit, attempting service by mail to a prisoner in jail meets due process requirements.

We have never addressed the specific claim that McGlory urges upon us now. Our most recent pronouncement on the issue, which also involved McGlory, held no more than that the government agency pursuing the forfeiture must send notice to the facility at which the detainee is actually incarcerated and that it may not rely on another agency to do so. See United States v. McGlory, 202 F.3d 664 (3d Cir. 2000) (en banc). We turn then to consideration of whether due process requires the government to go further and provide actual notice to an incarcerated defendant against whom it has initiated forfeiture proceedings.

A.

Our analysis perforce begins with Mullane v. Central Hanover Bank & Trust, Co, 339 U.S. 306 (1950), which established the framework for evaluating the adequacy of notice for due process purposes. As described by the Supreme Court, the judgment is a highly contextual one. "An elementary and fundamental requirement of due process in any proceeding which is to be accordedfinality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314 (emphasis added). A person or entity seeking to give notice must employ means "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Id. at 315.

Under this framework, it is clear that when an incarcerated individual is the one being served, the serving party must attempt to effect service where the prisoner may be found--that is, in prison, not the pre-incarceration address. See Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (per curiam). As the Magistrate Judge's report recounted,

8

this Court has ruled that notices in other forfeiture proceedings involving McGlory were inadequate when they did not attempt to reach him where he was incarcerated. See United States v. $184,505.01, 72 F.3d 1160 (3d Cir. 1995).

B.

The government argues that precedent supports the conclusion that direct mail always satisfies due process requirements. Indeed, Supreme Court authority indicates that mailing to the location where the party can be found usually suffices for due process purposes. See Mullane, 339 U.S. at 318. In Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983), the Court opined, "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party . . . if its name and address are reasonably ascertainable." The government points to this language and to Tulsa Professional Collection Services v. Pope, 485 U.S. 478 (1988), for the proposition that notice by direct mail suffices to establish its successful discharge of its obligations to McGlory under the Due Process Clause. See id. at 490 ("We have repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice.").

While this argument carries strong surface appeal, it ignores the framework that Mullane decreed. Precedents endorsing direct mail as a means of meeting constitutional notice requirements in certain contexts do not establish that such mailings result in per se satisfaction of notice requirements. Adequacy of notice is always evaluated by reference to the surrounding circumstances. See Mullane, 339 U.S. at 314. "The focus is on the reasonableness of the balance, and, as Mullane itself made clear, whether a particular method of notice is reasonable depends on the particular circumstances." Tulsa Professional Collection Serv., 485 U.S. at 484. For example, in Covey v. Town of Somers, 351 U.S. 141, 146-47 (1956), the Supreme Court held that notice sent to an incompetent taxpayer was inadequate, notwithstanding that the notice was sent by

9

direct mail. Though the facts of Covey are not, of course, analogous to the case at hand, that case's disposition stands as a stark example of the imprudence of gleaning from Supreme Court precedent a per se rule that mail will always be adequate notice. The proper effort at giving notice, the effort "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," Mullane, 339 U.S. at 315, will vary under the circumstances.

C.

Our sister circuits have differed on what kind of notice is the constitutional minimum for incarcerated individuals whose property is subject to forfeiture. United States v. Clark, 84 F.3d 378, 380 (10th Cir. 1996), involved the government's attempt to serve notice of an administrative forfeiture to a pre-trial detainee by mailing it to the facility where he was actually held. The Tenth Circuit held that this notice met the demands of due process, even if the party served did not actually receive the mailed notice. See id. at 381. In concluding that the notice was sufficient, the court employed a logic similar to that urged by the government and pointed to the Supreme Court's indication in Mennonite Bd. of Missions that mail is a constitutionally acceptable form of notice. See id. "We have found no case suggesting that service by mail is inadequate or requiring the government to personally serve an interested party at the place of incarceration. We decline to create such a requirement here." Id.

Other courts of appeals, however, have required more. In Weng v. United States, 137 F.3d 709 (2d Cir. 1998), the Second Circuit announced a requirement of actual notice. Weng involved several administrative forfeiture notices, one of which was sent by certified mail to the federal facility at which the defendant was detained. See id. at 714. The court determined that Mullane's balancing analysis compelled more. Noting the importance of the property interest at stake to the party notified and his inability to rely on others to vindicate those interests, see id. at 714-15, the court declared that the interests and burdens on the other side of the scale were less pronounced."[A]t least

10

where the owner is in federal custody on the very charges that justify a federal agency in seeking the forfeiture, there is no undue hardship to the agency in insuring that the owner-prisoner actually receive the legally required notification." Id. at 715. The court further noted the disparity in the parties' relative ability to take precautions to ensure the prisoner's receipt of notice.

> First, as a prisoner, the owner is unable to insure that he will receive the notice once the post office has delivered it to the institution. The owner is entirely dependent on the institution to deliver his mail to him. Second, because the owner's jailor--the Bureau of Prisons--is part of the same government . . . as the agency seeking to give notice, the forfeiting agent can in all probability easily secure the Bureau's cooperation in assuring that the notice will be delivered to the owner and that a reliable record of the delivery will be created.

Id.

The court concluded that, under the circumstances, merely sending notice to the detention facility without ensuring actual delivery to the prisoner is not notice "such as one desirous of actually informing [the owner] might reasonably adopt." Id. (quoting Mullane, 339 U.S. at 315). Instead, the court held that when the prisoner is in federal custody on the charges that are the basis of the forfeiture, "mailing of a notice to the custodial institution is not adequate unless the notice is in fact delivered to the intended recipient." Id.; see also United States v. Woodall, 12 F.3d 791, 794-95 (8th Cir. 1993) ("[I]f the government is incarcerating or prosecuting the property owner when it elects to impose the additional burden of defending a forfeiture proceeding, fundamental fairness surely requires that either the defendant or his counsel receive actual notice of the agency's intent to forfeit in time to decide whether to compel the agency to proceed by judicial condemnation.").

As Weng recites, the circumstances of prisoners differ greatly from free citizens, a fact that potentially alters the evaluation of what steps are reasonably calculated to

11

provide notice. When an individual is incarcerated at a location of the government's choosing, the government's ability to find and directly serve him or her with papers is at or near its zenith. Not only does the government know where to find the person, it can be equally sure that he or she will be there when the papers are delivered. Indeed, it can even move the person to a more convenient location if it so chooses. This appears especially the case where, as here, ongoing criminal proceedings against the prisoner brought the prisoner into frequent face-to-face contact with government attorneys.

For his part, a prisoner lacks the ability to take steps to ensure that his mail is actually delivered to him. This dilemma is especially acute for a prisoner who may be transferred from facility to facility, complicating efforts to effect service. In the outside world, an individual who changes addresses can arrange to have mail forwarded and can notify interested parties as to the change of address. While a prisoner may take similar steps, the effectiveness of these measures may depend in some degree on such independent factors as prison policies vis-a-vis the forwarding of mail or the amount of forewarning a prisoner receives of an impending transfer. We also note that a prisoner may not know how long he or she will be at the changed address, which may make prison forwarding difficult. Shades of the same problem also exist for a prisoner who is not moved, but remains at one facility. If a person lives in an apartment building where the distribution of mail among the residents leads to lost missives, that person has some recourse, through complaint or, possibly, moving elsewhere. Such options are necessarily curtailed for the prisoner.

The relative burdens and benefits of additional steps to ensure actual notice, therefore, suggest that requiring greater efforts at assuring notice by the government is appropriate. In other words, there is much to commend the Weng approach, and as an aspiration, the Weng rule comports with our ideas of the sort of effort that the government should undertake when it wishes to effect notice of a forfeiture proceeding against a prisoner in federal custody. On the other hand, Weng involved a

12

prisoner held in a federal, rather than a state, facility. As the Seventh Circuit has observed, "[t]he prophylactic Weng rule, requiring actual notice, becomes less reasonable as the federal government exercises less control over the detainee." Donovan v. United States, 172 F.3d 53, 1999 WL 50847, at *2 (7th Cir. Feb. 2, 1999). The rejoinder to this argument is that, though McGlory was held in a state facility, he was held pursuant to his arrest on federal charges, and in contracting with state facilities to house pre-trial detainees, the federal government has the ability to demand procedures that will allow the delivery of adequate notice for prisoners.

Though attractive, the Weng rule does present problems. The real difficulty with the Weng rule lies not in requiring the government to demonstrate actual notice, but rather the evidentiary burden that such a standard could impose after the passage of time. Given the temporal gap that may separate a forfeiture from a due process challenge to the proceedings, it is easy to imagine situations in which proof of the delivery of notice may be unavailable, even if such notice was properly served. An overly strict notice requirement, therefore, could lead to unsettling the outcome of completed proceedings based on nothing but bare allegations of a party who had lost property.

More importantly, the Weng approach undermines the procedural analysis that has heretofore animated the Supreme Court's dictates on this subject. The Court has never employed an actual notice standard in its jurisprudence. Rather, its focus has always been on the procedures in place to effect notice. See, e.g. , Mennonite Bd. of Missions, 462 U.S. at 799-80.3 We think this focus appropriate. Thus, while we will not adopt the Weng rule, the concerns animating Weng will inform our decision as to the procedures designed to give notice. We hold that, while

_____

3. It is true that Tulsa Prof. Collection Services v. Pope, 485 U.S. 478, 485
(1988), speaks in terms of requiring "actual notice" to those with a liberty or property interest at stake in a proceeding. That opinion, however, also describes mail service as an acceptable means of providing actual notice. See id. at 490. In our view, therefore, "actual notice" is employed not as a rule, but rather as a goal against which various forms of effecting actual notice are evaluated.

the government need not prove actual notice to the prisoner, if it chooses to rely on less than actual notice, it bears the burden of demonstrating the existence of procedures that are reasonably calculated to ensure that such notice will be given. Thus, our rule requires the government to ensure that proper procedures are employed in the facilities where it chooses to house its prisoners.4 Of course, if there is a signed receipt from the served party, the government does not then have to prove anything about the procedures that were in place.5

Because the District Court did not make findings on the sort of procedures in place at the facility at which McGlory was housed and whether these procedures were reasonably calculated to ensure that the notice, once addressed to McGlory, would still reach him upon arrival at the prison (and indeed, would only be accepted were McGlory actually present), we will vacate the District Court's ruling as to the jewelry forfeiture and remand for further proceedings consistent with this opinion.

_____

4. Our ruling is analogous to the approach taken by the Ninth Circuit in United States v. Real Property, 135 F.3d 1312 (9th Cir. 1998). In that case, the court declined to require actual notice to a forfeiture defendant when notice was sent by certified mail to the facility in which he was held awaiting trial and evidence was presented that the facility handled certified mail to inmates by opening the letters in their presence and, after checking for contraband, giving the contents directly to them. See id. at 1315. Under these circumstances, the court concluded that sufficient notice was given. See id. at 1316.

5. Our approach would also apply to the problem of the relocated prisoner. Just as the government can monitor whether mail reaches a prisoner within a facility, it can similarly ensure that mail will follow an inmate who is transferred from one facility to another. See generally Small v. United States, 136 F.3d 1334, 1337 (D.C. Cir. 1998) (deeming notice inadequate when notice sent to jail and returned absent indication that effort to find prisoner for resending would be burdensome to government); Armendariz–Mata v. U.S. Dep't of Justice, D.E.A., 82 F.3d 679, 683 (5th Cir. 1996) (holding notice inadequate when notice to jail returned undelivered and sender made no further inquiry).

14

III.

In the forfeiture proceeding regarding the Toshiba television and other electronic equipment, the government made no attempt to serve McGlory in jail. For due process purposes, therefore, the attempted notice was clearly inadequate. Though the government concedes the constitutional deficiency of its notice, it contends, and the District Court agreed, that McGlory's motion to vacate judgment on this forfeiture is precluded by the doctrine of laches. We disagree.

A.

The District Court treated McGlory's motion as arising under Federal Rule of Civil Procedure 60(b), but concluded that the improper notice given by the government of the forfeiture proceedings rendered the judgments, as applied against him, "voidable" rather than "void," as provided by Fed. R. Civ. Proc. 60(b)(4). We think this conclusion incorrect. As a general matter, we have held that the entry of a default judgment without proper service of a complaint renders that judgment void. See Gold Kist, Inc. v. Laurinburg Oil Co., Inc., 756 F.2d 14, 19 (3d Cir. 1985). The majority of courts of appeals to consider the fate of a prior forfeiture proceeding that violated notice requirements agree that a judgment issued without proper notice to a potential claimant is void. See United States v. Marolf, 173 F.3d 1213, 1216 (9th Cir. 1999); Clymore v. United States, 164 F.3d 569, 573 n.5 (10th Cir. 1999); Muhammed v. D.E.A., Asset Forfeiture Unit, 92 F.3d 648, 654 (8th Cir. 1996); Barrera—Montenegro v. United States, 74 F.3d 657, 661 (5th Cir. 1996); United States v. Giraldo , 45 F.3d 509, 512 (1st Cir. 1995). But see United States v. Dusenbery, 201 F.3d 763, 768 (6th Cir. 2000) (treating forfeiture as voidable rather than void); Boero v. D.E.A., 111 F.3d 301, 307 (2d Cir. 1997) (same).

In light of our decision in Gold Kist, we are in accord with the majority view. Gold Kist involved a service of a summons and complaint in a manner that did not conform with Pennsylvania law. See Gold Kist, 756 F.2d at 18. Defendants in that action challenged the default judgment

15

entered against them. Citing Fed. R. Civ. Proc. 60(b)(4), we declared that "[a] default judgment entered when there has been no proper service of complaint is, a fortiori, void, and should be set aside." Id. at 19. Because of the complaint's improper service, as well as the entry of default judgment before the expiration of the time for filing an answer, see id., the Gold Kist panel refrained from considering other factors that could also justify the setting aside of a default judgment. See id.

The same logic applies here. Though we understand the concern expressed by the Sixth Circuit in Dusenbery that a prisoner claimant could sit on his or her rights until after the passage of the statute of limitations for the government to reinitiate a proceeding, see Dusenbery, 201 F.3d at 768, we conclude that this concern can be addressed by other means, see id. at 769 (Cole, J., dissenting). As we explain below, a holding that the forfeiture against McGlory's property was void does not equate to a ruling that he is entitled to a return of the property or monetary relief from the government, because a Rule 60(b) motion is not a claim for the return of property. McGlory will therefore have to pursue further proceedings to recover his property, and it is in these proceedings that the government may invoke defenses that are predicated on McGlory's alleged delay.

B.

The District Court ruled that McGlory's motion to vacate was barred by the doctrine of laches. The doctrine of laches hails from equity, and is invoked when two essential elements exist: inexcusable delay in instituting suit, and prejudice resulting to the defendant from such delay. See Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1108 (3d Cir. 1996). We conclude that the District Court was incorrect to have applied laches analysis to McGlory's motion.

McGlory's motion was to vacate the forfeiture judgments against him and is treated, as discussed above, as arising under Fed. R. Civ. Proc. 60(b). It is understandable why the District Court may have thought that the doctrine of laches applied. A motion under Rule 60(b) is equitable in nature,

16

so it is reasonable to believe that equitable doctrines apply. See Assmann v. Fleming, 159 F.2d 332, 336 (8th Cir. 1947) ("The proceeding by motion to vacate a judgment is not an independent suit in equity but a legal remedy in a court of law; yet the relief is equitable in character and must be administered upon equitable principles."); see also Winfield Assocs., Inc. v. W.L. Stonecipher, 429 F.2d 1087, 1090 (10th Cir. 1970) ("Rule 60(b) . . . specifically preserves the right to attack a judgment by an independent equitable action."); In re Brown, 68 F.R.D. 172, 174 (D.D.C. 1975) (describing Rule 60(b) as codification of methods of gaining equitable relief from judgments).

In light of our ruling that the judgment against McGlory in the electronic equipment forfeiture is void, however, no passage of time can transmute a nullity into a binding judgment, and hence there is no time limit for such a motion. It is true that the text of the rule dictates that the motion will be made within "a reasonable time." See Fed. R. Civ. Proc. 60(b). However, nearly overwhelming authority exists for the proposition that there are no time limits with regards to a challenge to a void judgment because of its status as a nullity; thus laches is no bar to recourse to Rule 60(b)(4). See Hertz Corp. v. Alamo Rent-A-Car, Inc., 16 F.3d 1126, 1130-31 (11th Cir. 1994) (collecting cases); Briley v. Hidalgo, 981 F.2d 246, 249 (5th Cir. 1993); Katter v. Arkansas Louisiana Gas Co., 765 F.2d 730, 734 (8th Cir. 1985); In re Center Wholesale, Inc., 759 F.2d 1440, 1448 (9th Cir. 1985); Misco Leasing, Inc. v. Vaughn , 450 F.2d 257, 260 (10th Cir. 1971); Austin v. Smith, 312 F.2d 337, 343 (D.C. Cir. 1962); Moore v. Positive Safety Manufacturing Co., 107 F.R.D. 49, 50 (E.D. Pa. 1985); see also Rodd v. Region Constr. Co., 783 F.2d 89, 91 (7th Cir. 1986) ("[T]he reasonable time criterion of Rule 60(b) as it relates to void judgments, means no time limit because a void judgment is no judgment at all.") (citation and quotation omitted).

We agree that no passage of time can render a void judgment valid, and a court may always take cognizance of a judgment's void status whenever a Rule 60(b) motion is brought. Without addressing any other reason to bar a Rule 60(b) motion that attacks a judgment as void,6 we hold that

_____

6. We also note that McGlory's delay vis-a-vis attacking the judgment (as opposed to inquiring into the disposition of his property, an issue that

laches may not be used to preclude such a motion. Cf. Micro Leasing, 450 F.2d at 260 ("The cases say that a void judgment acquires no validity as the result of laches on the part of the adverse party. We are not asked to consider whether under any particular circumstances a movant under Rule 60(b) may be estopped or precluded fromfiling such a motion.") (footnote omitted).

C.

Though we hold that laches is not available to preclude a claimant from attacking a void judgment, our holding is not to be construed as allowing a petitioner to sit on his or her rights. It is true that if a court is able to determine that a prior judgment is indeed void, it should declare it as such, but that does not mean that other remedies, such as the actual return of property or its cash value, are immune from defenses of waiver or laches. In other words, we conclude that the potential prejudice that arises from such delay is best dealt with outside of the Rule 60(b) context.

Whether McGlory unreasonably delayed in seeking recovery of his property in general, which is the laches issue considered by the District Court, is a matter distinct from whether the judgment that forfeited the property was void. That is not, however, a matter that is before this Court. We are only reviewing the denial of McGlory's motion to vacate. Even if he prevails on this motion, that does not mean that he is entitled to any monetary relief or relief in the form of a transfer of property. It has been held that

_____

is not before us) was clearly not unreasonable. He maintains that he promptly sought relief from the judgments against him once he learned of them in 1994, and the District Court made no factfindings that indicate that McGlory learned of the judgments at an earlier date. Nor does this appear to be a situation in which McGlory can be accused of having waived his ability to bring a Rule 60(b) motion, as he did not previously launch a Rule 60(b) attack against the judgments. Cf. Beller & Keller v. Tyler, 120 F.3d 21, 23–24 (2d Cir. 1997) (acknowledging that laches cannot give a void judgment validity, but suggesting that a motion may be untimely when the voidness challenge is raised on a successive motion to vacate).

18

Rule 60(b) does not provide for such remedies. See United States v. One 1961 Red Chevrolet Impala Sedan, 457 F.2d 1353, 1356-57 (5th Cir. 1972) (holding that monetary remedy for void forfeiture, which depends on waiver of sovereign immunity, lies not in Rule 60(b) but in 28 U.S.C. S 1346(a)); see also United States v. $119,980.00, 680 F.2d 106, 107-08 (11th Cir. 1982) (holding Rule 60(b) may not be used to impose affirmative relief beyond setting aside prior judgment); United States v. One Douglas A-26B Aircraft, 662 F.2d 1372, 1377 (11th Cir. 1981) (same). In order to obtain such relief, McGlory may have to look elsewhere.

It is in the pursuit of his remedies that McGlory's delay, if any, will become an issue. Though the vacatur of the earlier judgment will be a powerful weapon for McGlory in such an effort, it will not decide the issue. McGlory would have to act within the confines of whatever legal framework surrounds the legal or equitable remedy he will elect to pursue. At that time, the District Court may consider whether the doctrine of laches applies, or whether the six-year statute of limitations for suits against the federal government is applicable. See 28 U.S.C.S 2401(a). It would appear that the federal statute applies, see Menkarell v. Bureau of Narcotics, 463 F.2d 88, 91 (3d Cir. 1972) (applying six-year statute of limitations of 28 U.S.C. S 2401(a) in attempt to recover forfeited property), even if the action is characterized as equitable, see, e.g., Blassingame v. Secretary of Navy, 811 F.2d 65, 70 (2d Cir. 1987) ("[T]he merger of law and equity assured that section 2401(a) covers both legal and equitable actions.").

If the District Court concludes laches analysis to be in order anyway, it will have to determine the interplay between laches and the relevant statute of limitations, giving consideration to the cases that indicate that if a suit is brought within the statutory period, laches would generally be unavailable. See, e.g., Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1108 (3d Cir. 1996); Henry v. United States, 46 F.2d 640, 642 (3d Cir. 1931) ("While there is no statute of limitations in equity, yet it generally in this respect follows the law, and will, in the absence of special extenuating

19

circumstances . . . regard the delay as inexcusable and refuse relief after the time of the statute of limitations in that particular locality has expired."); Ikelionwu v. United States, 150 F.3d 233, 238 (2d Cir. 1998) (declining to invoke laches when suit to recover forfeited property brought within statutory period). Also, insofar as it considers the doctrines of equity, the District Court will also have to consider whether the party asserting the defense of laches has clean hands. See United States v. Marolf, 173 F.3d 1213, 1219 (9th Cir. 1999) (refusing to reverse district court's rejection of laches defense in light of government's "inexplicable fail[ure] to remedy" an improper administrative notice or initiate proper judicial proceedings).

We reference the foregoing authority not to express any view on the merits but only to flag important issues that the District Court did not appear to consider in its analysis of laches. At all events, we make no ruling on issues of inexcusable delay because all we have before us is the motion to vacate, and, as we have held, laches analysis does not apply to such a motion. Finally, in ruling that the judgment in the electronic equipment forfeiture is void, we offer no opinion as to whether the government is prohibited from reinitiating the forfeiture action against McGlory or if the passage of the relevant statute of limitations has been tolled. The District Court will have to consider the issue should the government attempt to reinitiate such proceedings.

The judgment of the District Court will be vacated and the case remanded for further proceedings consistent with this opinion.

20

ALITO, Circuit Judge, concurring and dissenting:

I join parts I and III of the opinion of the court and concur in the judgment insofar as it relates to No. 98-3578. However, I respectfully dissent from the court's disposition of No. 98-3579 and from part II of the opinion of the court, which adopts an interpretation of due process that has no basis in prior decisions of the Supreme Court or our circuit.

The question before us is not whether it would be good policy to require the government in forfeiture proceedings to provide notice to interested parties by some means superior to the mail. Rather, the question is whether the government complied with the minimum requirements of the Due Process Clause by sending notice by mail (return receipt requested) to McGlory at the facility where he was detained. Under Supreme Court precedent, this met constitutional standards. The Supreme Court has repeatedly referred to the service of notice by mail as sufficient to satisfy the minimum requirements of due process. See, e.g. , Tulsa Prof 'l Collection Services v. Pope, 485 U.S. 478, 490 (1988); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of [a] party . . . ."). 1

The majority seemingly acknowledges that service by mail sent to the addressee's current address is constitutionally adequate in almost all other contexts, but the majority holds that such notice may not be sufficient when sent to a detainee or prisoner. Why? Why is it that mail sent to, say, an inexpensive long-term-occupancy hotel is reasonably calculated under all the circumstances to apprise an interested party of the pendency of a forfeiture

_____

1. On only one occasion has the Court held that notice by mail sent to the addressee's correct address was not constitutionally adequate. In Covey v. Town of Somers, 351 U.S. 141 (1956), the Court held that due process was violated where notice of foreclosure for delinquent taxes was mailed to a person who was known to be incompetent, lived alone, and had no guardian, no relatives in the state, and no other person who was able to help her with her taxes. Id. at 146-47. Thus, Somers hardly supports the majority's holding here.

21

action but mail sent to a jail or prison may not be? The answer must be that there is a significantly higher probability that mail sent to such hotels will reach the addressees than is the case with mail sent to a jail or prison. But where is the evidence that this is so? The majority studiously avoids this point--for the very good reason that no evidence whatsoever to this effect has been adduced, by McGlory, the majority in this case, or any other judicial opinion of which I am aware. Such systemic problems may or may not exist; I don't know; and I doubt that my colleagues do either. But without such evidence, there is no logical basis for the majority's decision.

It may well be that it would be advisable for those with legislative or rulemaking authority to require the government in forfeiture cases to provide better notice than is required by the minimum standard imposed by due process. Congress has recently manifested concern about the fairness of federal forfeiture procedures and has enacted the Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000), to remedy the problems that it found. This Act, however, does not require that notice of forfeiture be provided by some means better than the mail, but perhaps Congress should consider that question. Congress has the capability--which the federal courts plainly lack--to investigate whether notice of forfeiture sent by mail fails to reach the addressee in a significant number of cases. (The mere fact that McGlory and a handful of other federal prisoners and detainees have claimed that they did not receive notice sent by mail to their facilities is hardly enough to show the existence of a serious problem.) Congress also has the ability to craft a rule that is specifically targeted to deal with any problem it finds to exist. It can specify the addressees to which any such rule applies--e.g., all persons to whom notice is provided, only those in custody, only those in custody on federal charges, or only those in federal facilities. And it can provide that any new rule will not have retroactive effect. A court, in interpreting the Due Process Clause, lacks such flexibility."

I have three additional observations about the majority's decision. First, although the decision formally applies only

22

to notices of forfeiture sent by the federal government to persons in custody on federal charges, its logic extends to any forfeiture notices sent to any persons in custody. If notice of a federal forfeiture proceeding that is sent by mail to a person in a state facility on federal charges is not reasonably calculated under all the circumstances to apprise that person of the pendency of the federal forfeiture proceeding, notice of a state forfeiture proceeding that is sent by mail to another person held in the same facility on state charges cannot be reasonably calculated to inform that person of the pendency of the state forfeiture proceeding. Thus, the majority's decision has a broad logical sweep.

Second, the majority's standard regarding the adequacy of mail handling procedures is left open-ended and will almost certainly lead to confusion and litigation. Under the majority's decision, notice by mail to a detainee or prisoner satisfies due process only if the facility's mail handling procedures at the time in question were reasonably calculated to ensure that the notice reached the addressee. See Maj. Op. p. 14. What does this mean in practical terms? Must there be a written policy? Must the addressee sign a receipt? May delivery of the mail be entrusted to other detainees or prisoners? Must the mail be handed to the addressee personally? One or more rounds of litigation will almost certainly be required to answer these and related questions.

Third, although the majority has attempted to devise a rule that will not impose an undue evidentiary burden in cases in which forfeiture judgments are sought to be vacated for lack of proper notice, the majority's decision may well prove quite difficult to administer. As previously noted, the majority's mail handling standard is murky, and attempting to establish what procedures were followed at various points in the past at the numerous state and federal facilities in which federal detainees and prisoners have been held may not be easy. And if the majority's decision is extended to state detainees and prisoners, as I think logic requires, the problem will be magnified.

I would hold that due process was satisfied and leave it to the legislative or rulemaking processes to decide whether

23

additional notice requirements should be imposed in forfeiture cases.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

24