

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-2007

# Miles v. Aramark Corr Ser

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5567

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"Miles v. Aramark Corr Ser" (2007). *2007 Decisions.* Paper 1241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-5567

———————

MICKEY MILES,
Appellant

v.

ARAMARK CORRECTIONAL SERVICE AT
CURRAN FROMHOLD CORRECTIONAL FACILITY (CFCF);
TROY, GENERAL MANAGER, INDIVIDUALLY AND IN HIS
RESPECTIVE OFFICIAL CAPACITY, EMPLOYEE OF ARAMARK AT
CURRAN FROMHOLD CORRECTIONAL FACILITY (CFCF);
JOHN McCOY, SUPERVISOR, INDIVIDUALLY AND IN HIS
RESPECTIVE OFFICIAL CAPACITY, EMPLOYEE OF ARAMARK AT
CURRAN FROMHOLD CORRECTIONAL FACILITY (CFCF);
RODNEY ANDERSON, INDIVIDUALLY AND IN HIS RESPECTIVE
OFFICIAL CAPACITY, EMPLOYEE OF ARAMARK AT
CURRAN FROMHOLD CORRECTIONAL FACILITY;
MS. GREEN, INDIVIDUALLY AND IN HER RESPECTIVE
OFFICIAL CAPACITY, EMPLOYEE OF ARAMARK AT
CURRAN FROMHOLD CORRECTIONAL FACILITY (CFCF);
LEON KING II, COMMISSIONER OF THE
PHILADELPHIA PRISON SYSTEM;
MS. GAINES, CORRECTIONAL OFFICER AT
CURRAN FROMHOLD CORRECTIONAL CENTER;
MR. CARTER, CORRECTIONAL OFFICER AT
CURRAN FROMHOLD CORRECTIONAL FACILITY,
EACH INDIVIDUALLY AND IN HIS/HER
RESPECTIVE OFFICIAL CAPACITIES;
ROBERT TOMASZEWSKI, WARDEN OF THE
CURRAN FROMHOLD CORRECTIONAL FACILITY,
INDIVIDUALLY AND IN HIS RESPECTIVE OFFICIAL CAPACITY;
MARCO GIANNETTA, DEPUTY WARDEN AT THE
CURRAN FROMHOLD CORRECTIONAL FACILITY,
INDIVIDUALLY AND IN HIS RESPECTIVE OFFICIAL CAPACITY;

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 04-cv-2030
(Honorable Stewart Dalzell)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2007

Before: SCIRICA, Chief Judge, FUENTES and SMITH, Circuit Judges

(Filed: April 20, 2007)

OPINION OF THE COURT

PER CURIAM.

Mickey Miles instituted a civil action in the United States District Court for the

Eastern District of Pennsylvania by submitting his complaint and an incomplete motion to

proceed in forma pauperis on May 11, 2004. Two days later, the District Court directed

the Clerk to close the case pending receipt of the required documents in support of

Miles's motion. Subsequently, Miles provided the required documents, the District Court

granted him in forma pauperis status, and the Clerk docketed Miles's complaint. The

United States Marshals Service began the process of serving the complaint, in which

Miles named as Defendants Aramark Correctional Services, Inc., John McCoy, Troy,

Rodney Anderson, Manitta Frank, Karen Green, Philadelphia prison commissioner Leon

King, II, Curran Fromhold Correctional Facility ("CFCF") warden Robert Tomaszewski, CFCF deputy warden Marco Giannetta, and correctional officers Regina Gainey,[1] Edward Carter, and Marsha Warner.

After the complaint had been served on Aramark, King, and Giannetta only, Miles moved for entries of default against all Defendants, as none had responded to his complaint. The District Court entered defaults against Aramark, King, and Giannetta. Soon thereafter, those three Defendants moved to set aside the entries of default, explaining that they had not responded to the complaint because the action had remained "closed" on the District Court docket. The District Court granted their motion on March 30, 2005.

In his complaint, Miles alleged the following.[2] On April 6, 2004, he was transferred to CFCF. He informed "medical" and the chaplain that it was Passover, and he requested kosher meals. He did not eat until April 8, 2004, when he received a kosher meal without matzo bread. On April 9, 2004, Aramark served Miles Passover matzos and "unleaven cereal et cetera" for breakfast. On April 12, 2004, Aramark refused to serve him a breakfast that was kosher for Passover.

---

[1]We substitute the correct spelling of Defendants' names where possible.

[2]Miles sued Aramark and Aramark employees in a separate suit about similar claims in an earlier timeframe. Miles tried those claims with the claims in this case. Although Miles originally appealed from the judgment as it related to those claims against Aramark and its employees, he moved to withdraw his appeal of that matter (Supp. App. 69), and the Clerk granted his motion, see Miles v. Aramark Corp., No. 05-5566 (order entered on Nov. 14, 2006).

3

On April 14, 2004, Aramark removed Miles's name from the list of those receiving kosher meals because Passover had ended. On that same day, Taylor (the prison chaplain) arranged for Miles to have a kosher diet. However, on April 15, 2004, the diet that Miles received was deficient because it included only milk and one kosher cereal. Miles refused to sign for his food, so he did not eat. On April 20, 2004, he again refused to sign and did not eat because his breakfast tray included only one milk, one juice, and one breakfast cereal. He did not receive lunch on April 21, 2004, despite filing an emergency grievance to King, or breakfast on April 24, 2004. On April 26, 2004, Miles became sick after eating tainted "leftover unfrozen Passover roast chicken," and Gaines would not let him call for help. Miles "aggrieved to" Tomaszewski and King. Miles did not have breakfast or lunch on many days in August.

Gaines, Carter, and Warner also hindered Miles in his attempts to go to the law library. On the orders of Deputy Warden Osie Butler, Gaines, Carter, and Warner did not let Miles make copies. They also harassed Miles and tore up his library pass. He missed a deadline and his mail was returned to him, so he "aggrieved to" Giannetta.

Defendants King and Giannetta moved to dismiss the complaint as to them, arguing that Miles had not stated a claim against them upon which relief could be granted. In an order entered on May 25, 2005, the District Court agreed that Miles did not allege that King or Giannetta had violated his constitutional rights and granted their motion.[3]

_____

[3]After Miles served the dismissed complaint on King and tried to serve it on Giannetta,
(continued...)

4

Miles filed a motion for appointment of counsel, which the District Court denied in an order entered on July 20, 2005. Claiming that it was not a state actor, Aramark sought summary judgment, which the District Court also denied.

The District Court, with the consent of all parties, referred Miles's case to Magistrate Judge Scuderi pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Magistrate Judge Scuderi presided over a three-day jury trial. At the outset of the trial, Magistrate Judge Scuderi dismissed Troy, McCoy, Anderson, Gordon, and Frank pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for lack of service. After Miles presented his case (and Defendants declined to put on any additional evidence), the Magistrate Judge denied Miles's motion for judgment as a matter of law, and granted Defendants' motions for judgment as a matter of law, and entered judgment in their favor.[4]

Miles appeals. In his informal appellate brief, he identifies the orders from which he appeals as the March 30, 2005 order setting aside the entry of default, the May 25, 2005 order dismissing King and Giannetta from the suit, the July 19, 2006 order denying his motion for appointment of counsel, as well as the order dismissing Troy, McCoy, Anderson, Gordon, and Frank for failure to serve, and the order granting the remaining

_____

[3](...continued)
the two Defendants, with others, moved to dismiss the complaint. The District Court granted the motion as to King and Giannetta.

[4]The Magistrate Judge also denied as moot Miles's motion for injunctive relief regarding the prison law library.

5

Defendants' motion for judgment as a matter of law at the close of the evidence. Miles also takes issue with some of the Magistrate Judge's rulings and actions at trial.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 636(c)(3).[5] Preliminarily, we consider King, Giannetta, Tomaszewski, Gainey, Carter, and Warner's argument that we should dismiss Miles's appeal, or, at least, not review the ruling on the motion for a judgment as a matter of law or any other trial ruling because Miles did not provide for a transcript in compliance with Local Appellate Rule 11.1. Although Defendants are correct that failure to comply with the transcript rule "shall be grounds for dismissal of the appeal," Local App. R. 11.1, a dismissal for a failure to comply with a procedural rule is disfavored. See Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc., 884 F.2d 89, 93 (3d Cir. 1989). Upon weighing the relevant factors, including the willfulness of the rule violation and the prejudice suffered by the opposing party,[6] see id.,

---

[5]As an initial matter, we reject Miles's argument that Magistrate Judge Scuderi did not have jurisdiction to try his claims. The District Court, with the consent of all parties, referred Miles's case to Magistrate Judge Scuderi pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Although Miles claims that he only orally consented to a magistrate judge referral in another case, Miles's signed consent form for the referral in the instant action is in the record. (Supp. App. 37.)

[6]In particular, we note that Miles's failure to obtain a transcript appears inadvertent. Furthermore, if Miles late-realized his obligation to make arrangements for the provision of the transcript, he was placed in a quandary. On January 17, 2006, the District Court ordered Miles to "REFRAIN from filing any motion in or sending any correspondence to this Court for the duration of his appeal." (Emphasis in original.) Also, Defendants, having obtained a transcript, suffered minimal prejudice in defending the appeal.

we decide not to dismiss the appeal or impose sanctions; instead, we will consider Miles's appeal on the merits.[7]

We review the orders denying the motion for appointment of counsel, setting aside the entries of default, dismissing the complaint against some parties for failure to serve, as well as trial rulings admitting or excluding evidence for abuse of discretion. See Tabron v. Grace, 6 F.3d 147, 157-58 (3d Cir. 1993); United States v. $55,518.05 in U.S. Currency, 782 F.2d 192, 194 (3d Cir. 1984); Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1308 (3d Cir. 1995); United States v. Johnson, 388 F.3d 96, 100 (3d Cir. 2004). We exercise plenary review over the orders dismissing claims on a motion to dismiss and granting judgment as a matter of law. See Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996); LePage's, Inc. v. 3M, 324 F.3d 141, 145 (3d Cir. 2003).

We first determine whether the District Court clearly abused its discretion in denying Miles's motion for appointment of counsel. To decide whether to appoint counsel, a court must determine, as a threshold matter, whether a claim has arguable merit in fact and law. See Tabron, 6 F.3d at 155. If a claim has some merit, then a court must consider the litigant's ability to present the case, taking into account the litigant's education, literacy, prior work experience, prior litigation experience, and ability to understand English. See id. at 156. A court also must evaluate the complexity of the

---

[7]We will not, however, consider Miles's claims of a Fourth Amendment violation, sexual harassment, and intrusion upon seclusion. Miles waived these issues not presented to the District Court.

legal issues in the case, the degree to which factual investigation will be necessary (and the litigant's ability to pursue such investigation), the likelihood that the case will turn on credibility determinations, the need for expert testimony in the case, and litigant's ability to retain counsel. See id. at 156-57. At the outset, Miles's claims appeared to have some merit, as the District Court noted. Miles was without funds to obtain counsel, and it was likely that his case would turn on credibility determinations. However, as the District Court concluded, Miles is a literate, experienced litigant, who is able to understand English. His claims were not particularly complex. Furthermore, Miles's case was largely the retelling of events that happened in his presence, so, to that extent, he did not need to engage in an extensive investigation. He did not require an expert witness. Accordingly, although some factors weighed in favor of appointing counsel, the District Court did not abuse its discretion in denying Miles's motion.

The District Court also did not abuse its discretion in setting aside the entry of default. In considering a motion to set aside a default, a district court must consider "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985). The District Court was within its discretion to vacate a default (which is not favored, see Hritz v. WomaCorp., 732 F.2d 1178, 1181 (3d Cir. 1984)) as Miles suffered little prejudice given that his case was still at its inception, where Defendants presented meritorious defenses,

8

and where Defendants had failed to respond to the complaint because the case was marked closed on the docket.

The District Court did not err in dismissing King and Giannetta from the lawsuit. Even if we liberally construe Miles's claims against King and Giannetta, we conclude that he did not state any claim against them upon which relief can be granted. King and Giannetta are only mentioned in the complaint in relation to actions taken by Miles – Miles "aggrieved to" or filed grievances with King and Giannetta. His allegations do not include a cognizable claim against King or Giannetta. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Also, the Magistrate Judge did not abuse its discretion in dismissing Troy, McCoy, Anderson, Green, and Frank for failure to effect service. As it was unclear to the Magistrate Judge, it is unclear to us why the United States Marshals Service, appointed to serve the complaint, did not serve some Defendants. The record is ambiguous as to whether the failure was the fault of Miles or the Marshals Service. Nonetheless, the named Defendants were not timely served, and when the matter was brought to Miles's attention, Miles did not request an extension of time to effect service or otherwise show good cause for the failure to serve. (Supp. App. 73, Transcript 1-5 - 1-8.) See Fed. R. Civ. P. 4(m). He merely stated that he had been unaware that some Defendants had not been served. (Supp. App. 73, Transcript 1-5 - 1-8.)

Lastly, the Magistrate Judge did not err in entering judgment as a matter of law in favor of the remaining Defendants. Miles did not prove his allegations relating to the

9

denial of a kosher diet at trial. Miles may have received, during Passover of some year, meals that were kosher, but did not meet kosher requirements for Passover (Supp. App. 115, Transcript 2-37) (although he seems to have been able to get replacement meals by going to the prison kitchen (id. at 112, Transcript 2-25)). Miles presented evidence that he often received his meal tray late (id. at 112-13, 115-16, 121, Transcript 2-28 - 2-29, 2-40 - 2-41, 2-64) (although Defendants provided explanations for the tardy delivery, and some of the late delivery occurred after the time frame described in the complaints (id. at 116, Transcript 2-41)), and even received spoiled food once or twice (although a correctional officer brought him a replacement tray at least once) (id. at 114, Transcript 2-35). Nonetheless, Miles did not show that Defendants refused to provide him kosher meals once he followed prison procedures to request kosher meals. (Id. at 141-42, Transcript 2-141 - 2-147.)

Miles also did not show that any denial of library time or privileges was in retaliation for him filing grievances. First, it appears that he is afforded ample library time. He works in the library 20 hours per week. (Supp. App. 137, 187, Transcript 2-127, 3-113.) He has been a frequent library visitor, as well; for instance, he made 22 visits to the prison library in April and May of 2004. (Id. at 167, Transcript at 3-35.) He admitted that he goes to the library to read and do research when he is not working. (Id. at 187, Transcript at 3-114.) He also did not put in question the legitimacy of the prison's policies to regulate inmate library visits based on space constraints. (Id. at 165, 169,

Transcript at 3-26 - 3-28, 3-42.) Miles even conceded that Carter and Warner did not

prevent him from going to the library. (Id. at 195, Transcript at 3-148.)

Miles did not show that Carter and Warner retaliated against him by disallowing

him from making copies. Miles testified that Carter and Warner refused to make copies

for him when they learned of a lawsuit he had filed, and told him that he had to get

permission from Butler, who was not a defendant. (Supp. App.186, Transcript 3-109.)

However, Warner testified that he did not know about the lawsuit. (Id. at 161, Transcript

at 3-9.) Miles did not prove that Carter knew about the lawsuit, although Carter spoke of

Miles's threats to sue everybody. (Id.) Miles testified that he was limited to 10 copies

per day. (Id. at 186, Transcript at 3-109.) Miles did not put in question Carter and

Warner's explanation of the copy policy enforced by Butler as a result of a prison paper

shortage, namely that inmates are limited to no more than 10 copies unless they need to

make copies of documents for court. (Id. at 160, 172, Transcript at 3-8, 3-55 - 3-56.)

Warner testified that he allowed Miles to make as many copies as he wished subject to the

prison policy limiting copies. (Id. at 161, Transcript at 3-9.) Warner stated that he

contacted Butler, who always allowed Miles to make more than 10 copies except once –

when Miles wanted to copy 50 pages from a book. (Id. at 161-162, Transcript at 3-9, 3-

14.) Miles did not question that Butler, not Carter or Warner, decided questions of

copies.

11

After reviewing the transcript, we conclude, as the Magistrate Judge did, that Miles did not show that Defendants violated his constitutional rights.[8] Miles presented no evidence that Tomaszewski was personally involved. See Rode, 845 F.2d at 1207. He also did not show that the remaining Defendants violated his rights by refusing him a kosher diet, preventing him from using the prison law library, or denying him permission to make copies. Accordingly, the Magistrate Judge did not err granting Defendants' motion for judgment as a matter of law.

In conclusion, because we find no error in the Magistrate Judge's ruling on the motion for judgment as a matter of law or in the other challenged rulings, we will affirm the judgment.

---

[8]We also conclude that Miles's accusations of bias on the part of the Magistrate Judge are completely unfounded, so we tarry no further with them. However, we will consider those complaints about evidentiary rulings that can be separated from Miles's vituperation. Nonetheless, we find no defect with the Magistrate Judge's resolution of the evidentiary issues presented. In particular, the Magistrate Judge did not abuse his discretion in limiting the testimony of John Ennis, who was not in prison during the time periods at issue in the complaint (the witness had walked away from a work-release program). (Supp. App. 100-01, Transcript 1-116 - 1-118.) Also, contrary to Miles's belief, the Magistrate Judge did allow Miles to "express himself" and present evidence.

12