**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2497

_____

SECURITIES & EXCHANGE COMMISSION

v.

TODD LAHR; THOMAS MEGAS

Thomas Megas,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5:20-cv-01593)
U.S. District Judge:  Honorable Edward G. Smith

_____

Argued July 8, 2024

_____

Before:  SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, <u>Circuit Judges</u>.

(Filed: July 24, 2024)

_____

OPINION[*]

_____

Jeffrey A. Berger
Matthew F. Scarlato
Stephen Silverman      [ARGUED]

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

United States Securities & Exchange Commission
100 F Street NE
Washington, DC 20549

      <u>Counsel for Appellees</u>

James S. Ballenger
Ben Buell    [ARGUED]
Jonathan Duval    [ARGUED]
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903

Catherine E. Stetson
Hogan Lovells US
555 Thirteenth Street NW
Columbia Square
Washington, DC 20004

      <u>Court Appointed Amicus Curiae</u>[1]

SHWARTZ, <u>Circuit Judge</u>.

Thomas Megas appeals the District Court's order denying his motion to vacate the default judgment entered against him. For the reasons set forth below, we will vacate that order, as well as the entry of default and default judgment.

I

A

The Securities and Exchange Commission ("SEC") filed a complaint against Megas and his co-defendant, Todd Lahr, for violating the federal securities laws.[2] The SEC believed that Megas resided in Switzerland and, in April 2020, asked the Swiss

---

[1] The Court thanks amicus counsel for their helpful briefing and excellent oral argument.

[2] The claims against the co-defendant were resolved via a consent judgment.

2

Central Authority to serve him with the complaint pursuant to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Convention").[3] Approximately three weeks later, Swiss authorities informed the SEC that (1) local police confirmed that Megas was legally domiciled at the address where service was attempted, (2) their efforts to serve him were unsuccessful because he was out of the country until the end of August, and (3) they would reattempt service in September.

The District Court granted the SEC three extensions to serve Megas because Swiss authorities did not find Megas at the address. In late October 2020, the SEC enlisted the Swiss Financial Market Supervisory Authority ("FINMA") to help locate Megas. FINMA confirmed that Megas was domiciled at the Swiss address where service was attempted but could not obtain his travel records.[4] The SEC then attempted to contact Megas by email on October 27, 2020, using only one of the several email addresses that it uncovered during its investigation. The SEC sent the email using RPost, a "technology platform . . . that provides proof of delivery and read receipts if the recipient opens the email." SA 175.[5] RPost confirmed that the email was delivered but

---

[3] The Convention is an international agreement that governs service of process abroad. See Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 (hereinafter cited as "Hague Service Convention").

[4] The U.S. Department of Homeland Security and co-defendant Lahr were also unable to provide information about Megas's travels.

[5] We refer to the SEC's appendix as "SA__" and Amicus Curiae's appendix as "JA__".

not opened. The SEC also learned via internet searches that Megas was a current or former director of four companies with physical addresses in the United Kingdom.

Based on that information, the SEC filed another motion, this time requesting that the District Court (1) hold that the Convention did not apply because the unsuccessful efforts to serve Megas at the Swiss address made it unlikely that he still resided there, (2) authorize alternative service via email under Federal Rule of Civil Procedure 4(f)(3), and (3) extend the deadline to enable the SEC to attempt service at one of the UK addresses under Rule 4(f)(2)(C)(ii). The District Court granted the request for permission to serve by email and extended the service deadline to May 28, 2021.

The service attempts in the United Kingdom were unsuccessful. The SEC then attempted to serve Megas by email,[6] and it received the following:

> AUTOMATED RESPONSE. It has not been possible to deliver your message to [Megas's Hotmail address] as the email address does not appear to be in use.

JA 99. RPost showed that the email was delivered, but not opened.

## B

Despite having failed to effectuate service at a physical address or adduce proof that Megas opened the emails the SEC sent to him, the SEC requested the entry of default, which the clerk entered. Thereafter, the District Court granted the SEC's motion

---

[6] The email attached the summons, complaint, and District Court's order granting alternative service.

4

for default judgment[7] and entered a final judgment against Megas for more than $500,000.  Six days later, Megas moved pro se to vacate the judgment as void for lack of jurisdiction and improper service under the Convention, pursuant to Federal Rules of Civil Procedure 60(b)(3) and 60(b)(4).  After a telephonic evidentiary hearing and oral argument, the Court denied Megas's motion.  Sec. & Exch. Comm'n v. Lahr, No. 20-cv-1593, 2022 WL 2828846 (E.D. Pa. July 20, 2022).  As to service, the Court concluded, in relevant part, that no "jurisdictional error" or "violation of due process" rendered the judgment void under Rule 60(b)(4), reasoning that (1) the requirements for foreign service under the Convention do not apply where the person's address is not known, id. at *7, (2) the factual record permitted alternative service by email in light of the SEC's futile attempts to serve, id., and (3) Megas had notice of the litigation for approximately one year before the default judgment was entered, id. at *8.  As to personal jurisdiction,

---

[7] In its motion for default judgment, the SEC represented that the automated response was "user-generated" and that such response indicated that Megas "had accessed his email account" between the time the October 2020 and February 2021 emails were sent.  This representation was based on formatting differences between the automated response from Megas's email address and an automated response from a different Hotmail address known to be inactive.

the Court concluded that Megas had sufficient contacts with the United States to put him on notice that he could be involved in litigation here.  Id. at *4.

Megas appeals.

## II[8]

The United States and Switzerland are parties to the Convention, a treaty intended "to simplify, standardize, and generally improve the process of serving documents abroad."  Water Splash, Inc. v. Menon, 581 U.S. 271, 273 (2017).  The Convention requires that each contracting "state" (i.e., country) designate a central authority to receive requests for service, serve the documents consistent with its own law, and return a certificate of service to the requesting party.[9]  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698-99 (1988); Hague Service Convention arts. 2-6.

"Submitting a request to a central authority is not, however, the only method of service approved by the Convention."  Water Splash, 581 U.S. at 275.  The Convention

---

[8] The District Court had jurisdiction pursuant to 15 U.S.C. §§ 77t(b)-(d), 77v(a), 78u(d),(e) and 78aa(a), and 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over an order denying a Rule 60(b)(4) motion and review all other orders denying relief under Rule 60(b) for abuse of discretion.  Budget Blinds, Inc. v. White, 536 F.3d 244, 251 & n.5 (3d Cir. 2008) (internal citations omitted).  Under Rule 60(b)(4), the court may relieve a party from a final judgment if the judgment is void.  Fed. R. Civ. P. 60(b)(4).  "A default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside."  Gold Kist, Inc. v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985).  The Court need not reach the merits of Megas's Rule 60(b)(3) argument given the Court's determination that the District Court's judgment is void.

[9] Federal Rule of Civil Procedure 4(f) accounts for the Convention and its exceptions by: (1) allowing for service by any "internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [] Convention[,]" Fed. R. Civ. P. 4(f)(1); (2) permitting a plaintiff to resort to "a method

6

also provides for (1) alternative methods of service, which are permitted methods unless a country has objected to them; and (2) "derogatory" methods of service, which are methods that a country decides to agree to, either bilaterally or unilaterally.[10]  For example, Article 10 of the Convention authorizes certain alternative methods of service, such as service through "postal channels," so long as a receiving state does not object to them.  See Hague Service Convention art. 10(a).  Additionally, Articles 11 and 19 permit contracting states to consent, either with other contracting states or unilaterally, to methods of service from abroad not expressly authorized by the Convention.[11]  See Hague Service Convention arts. 11, 19.  Thus, the Convention "specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies."  Water Splash, 581 U.S. at 273 (internal quotation marks and citation omitted); see also Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the Service Convention, 21 ¶ 50 (2016) ("Practical

_____

that is reasonably calculated to give notice" "if there is no internationally agreed means, or if an international agreement allows but does not specify other means[,]" Fed. R. Civ. P. 4(f)(2); and (3) authorizing a court to approve other methods of service "not prohibited by international agreement," Fed. R. Civ. P. 4(f)(3).

[10] The Practical Handbook on the Operation of the Service Convention refers to the methods of service that "deviate from [the Convention's] main and alternative [methods]" as "derogatory" methods of service.  Permanent Bureau of the Hague Conference of Private International Law, Practical Handbook on the Operation of the Service Convention ("Practical Handbook") 96 ¶ 294 (2016).  The Practical Handbook is published by the Hague Conference on Private International Law and is a "tool for courts" and parties to reach a common understanding of the Convention and its "channels of transmission."  Practical Handbook at IX.

[11] There is no evidence that Switzerland has agreed to additional methods of service with the United States, or pursuant to its own domestic law under Articles 11 and 19, respectively.  Id.

Handbook") (explaining that the Convention is "exclusive," and "provides the relevant catalogue of possible means of transmission for service abroad.").[12]

A

Although "compliance with the Convention is mandatory in all cases to which it applies," Schlunk, 486 U.S. at 705, the Convention does not apply "where the address of the person to be served with the document is not known." Hague Service Convention art. 1.

The SEC contends that its reasonably diligent but unsuccessful efforts to serve Megas at the address associated with him rendered this address not known. Courts have different views concerning the "reasonable diligence" test. Some courts employ a "reasonable diligence" test that examines whether a plaintiff engaged in reasonably diligent efforts to discover a defendant's address.[13] The SEC cites one case that employs

---

[12] Additionally, this reading comports with the views of the Convention's signatories. Water Splash, 581 U.S. at 282. In 2009, the Special Commission on the practical operation of the Service Convention, which is comprised of signatory representatives, unanimously adopted the view that the Convention is "of a non-mandatory but exclusive character." Hague Conference on Private International Law, Conclusions and Recommendations of the Special Commission on the Practical Operation of the Hague Apostille, Service, Taking of Evidence and Access to Justice Conventions, ¶ 12 (2009), https://assets.hcch.net/docs/5bf65314-4f55-42b5-9b0c-770f2bfccd37.pdf. The Department of Justice also advises that "[i]f the Convention applies, parties cannot agree or stipulate to a method of service that the Convention neither authorizes nor permits and a party in the U.S. should not utilize a method of service that to which the state of destination has objected." Office of International Judicial Assistance Guidance on Service Abroad in U.S. Litigation, at 4-5 https://www.justice.gov/civil/page/file/1064896/download (Oct. 1, 2018).

[13] See, e.g., Smart Study Co. v. Acuteye-Us, 620 F. Supp. 3d 1382, 1390-91 (S.D.N.Y. 2022) ("Courts in this Circuit have found that an address is not known if the plaintiff exercised reasonable diligence in attempting to discover a physical address for

a different "reasonable diligence" test, which focuses on a plaintiff's diligence in attempting to serve a defendant at a known address.[14] The latter approach does not comport with the Convention's text. See Hague Service Convention art. 1 (providing that the Convention does "not apply where the address of the person to be served with the document is not known."). Nor is it consistent with the Convention's structure, as the Convention has provisions for dealing with a defendant who intentionally evades service. See, e.g., Hague Service Convention arts. 5 (allowing the applicant to request that the

_____

service of process and was unsuccessful in doing so." (internal quotation marks and citation omitted)); Kelly Toys Holdings, LLC. v. Top Dep't Store, No. 22-cv-558, 2022 WL 3701216, at *7 (S.D.N.Y. Aug. 26, 2022) (the "inability of [the plaintiff's reasonably diligent] efforts to identify [the defendants' physical] addresses made [them] 'not known' for [] purposes of the Hague Convention"); Sunline USA LLC v. Ezzi Grp., Inc., No. 22-1650, 2022 WL 3691021, at *24 n.2 (E.D. Pa. Aug. 25, 2022) (the defendant's address was not known because the previously known address was occupied by a new tenant and efforts to locate an updated address for the defendant were unsuccessful); Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co., No. 18-cv-01530, 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25, 2019) (authorizing alternative service as to the defendants for whom "[p]laintiff has been unable to ascertain physical addresses for" and declining to authorize alternative service as to the defendants for whom "[p]laintiff has identified physical addresses"); UnderSea Recovery Corp. v. Madero Holding, S.A. de C.V., No. 19-cv-00286, 2020 WL 13544376, at *3 (N.D. Ga. May 19, 2020) ("[A]n address is not known within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address." (internal citation and quotation marks omitted)); Luxottica Grp. S.p.A. v. P'artnerships & Unincorporated Ass'ns Identified on Schedule "A", 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) (granting motion to dismiss for improper service under the Convention because there was no indication that reasonably diligent efforts were employed to determine the defendants' physical addresses such that they should be considered "not known" for purposes of the Convention).

[14] See Backjoy Orthotics, LLC v. Forvic Int'l Inc., No. 14-cv-249, 2016 WL 7664290 (M.D. Fla. Mar. 7, 2016). There, the district court's articulation of the "reasonable diligence" test appears to stem from concerns about a defendant's ability to evade service. While such concerns are valid, they do not permit us to circumvent the text of the Convention, which, as discussed herein, prescribes ways to address a person who tries to evade service.

9

Central Authority serve a document by a particular method, as long as that method is not "incompatible with the law of the State addressed"),[15] 14 (providing that "[d]ifficulties which may arise in connection with the transmission of judicial documents for service shall be settled through diplomatic channels"), 15 (providing for entry of default). Thus, the Convention contemplates a difference between situations where the defendant's address is not known and the defendant's whereabouts are not known. In only the former, the Convention does not apply.

Here, the Swiss Central Authority's failed service efforts do not render Megas's address "not known" for purposes of the Convention. To the contrary, its communications confirmed the accuracy of Megas's address, even though efforts to serve him at that address were unsuccessful. See SA 84 (Swiss authorities confirming that Megas "is legally domiciled at" the address); JA 92 (FINMA confirming that the address on record is Megas's last known address and that "competent authorities have confirmed that [Megas] is currently still registered at this address"); cf. Practical Handbook 189 ¶ 68 (noting that "[t]he Convention is exclusive and [service] time delays are not a sufficient reason to circumvent the Convention"). Accordingly, Megas's address was known, and the District Court erred in concluding otherwise.

---

[15] For instance, Article 141 of the Swiss Civil Procedure Code permits authorities to proceed with service by public notice when "the whereabouts of the addressee are unknown and cannot be ascertained despite making reasonable enquiries" or "service is impossible or would lead to exceptional inconvenience." Swiss Civil Procedure Code, Dec. 19, 2008, SR 272, art. 141 (Switz.).

B

Because Megas's address was known, the Convention applied, so we consider whether the email service here was proper under the Convention and conclude that it was not. As we explained, the Convention prescribes the means for service abroad. Thus, for email service to be permitted in Switzerland, it must be authorized by the Convention's terms. Here, (1) the Convention does not expressly provide for service by email, (2) there is no evidence that the United States and Switzerland have consented to email service under Article 11, and (3) email service under Swiss law is permitted only if the served party consents, and there is no evidence that Megas consented.[16] Thus, email service upon Megas in Switzerland was not permitted under the Convention.[17]

Because Megas was not properly served, the District Court erred in declining to grant the motion to vacate the entry of default and default judgment. See Gold Kist, Inc.

---

[16] Even if he had, the email service would have needed to be effectuated through the Article 5 process, rather than by the SEC itself. See Hague Convention art. 5; see also Swiss Civil Procedure Code, Dec. 19, 2008, SR 272, as amended by Annex No II 5 of the FA, Mar. 18, 2016, AS 2016 4651; BBI 2014 1001 (2017), art. 139 (Switz.) (providing for electronic service in domestic settings only "[w]ith the consent of the person concerned," and if other requirements, aimed at ensuring email transmissions are secure and reach their intended recipient, are satisfied); cf. Practical Handbook 194-95 ¶¶ 79-82 (discussing such requirements). The SEC conceded that Swiss law limits the use of email service.

[17] Some courts have considered whether Article 10(a)'s provision for service by "postal channels" encompasses service by electronic means. See, e.g., Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co., 494 F. Supp. 3d 404, 414-15 (N.D. Tex. 2020) (collecting cases). Here, Switzerland has objected to Article 10(a), so we need not address whether Article 10(a)'s use of the phrase "postal channel" includes email service. Declaration/reservation/notification, Hague Conference on Private International Law, https://hcch.net/en/instruments/conventions/status-table/notifications/?csid=424&disp=resdn [https://perma.cc/JN32-EF6Z].

v. Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985) ("A default judgment entered when there has been no proper service of the complaint is, a fortiori, void, and should be set aside." (emphases omitted) (citing Fed. R. Civ. P. 60(b)(4)).

## III

For these reasons, we will vacate (1) the order denying the motion to vacate default judgment, and (2) the entry of default and default judgment.[18]

---

[18] We leave to the District Court to determine whether the time for service abroad should be further extended. Service is a prerequisite for exercising personal jurisdiction. Cf. Fischer v. Fed. Express Corp., 42 F.4th 366, 381 (3d Cir. 2022) ("For a court to exercise personal jurisdiction over a defendant, the defendant must be served process, alerting the defendant to the pendency of the suit and the nature of the claims against her."); Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").